### CALAF et al. v. GONZALEZ et al.
### No. 3748.

Circuit Court of Appeals, First Circuit.

May 8, 1942.

---

[2] Italics added.

[3] 68th Cong., 1st sess., Sen.Rept. 398.

Nelson Gammans, of New York City (R. Rivera Zayas, Joaquin Velilla, and Orlando J. Antonsanti, all of San Juan, P. R., on the brief), for appellants.

Jaime J. Saldana, Guillerno Silva, and Geigel & Silva, all of San Juan, P. R., on the brief for appellees.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAHONEY, Circuit Judge.

This case is here on appeal from a judgment of the District Court of Puerto Rico in favor of the plaintiffs, employees of the defendants, holding them entitled to be paid the difference between the wages actually received by them and the amount required by the Fair Labor Standards Act of 1938, 29 U.S.C.A. §§ 206, 216, hereinafter called the Act.

The facts in this case are simple and the parties are in substantial agreement as to them. The defendants own and operate jointly a sugar mill at Manati, Puerto Rico, hereinafter called the central or the mill, where sugar cane is processed into sugar and then shipped to the United States. The sugar cane thus processed into sugar is grown on farms owned jointly by defendants as well as on farms owned separately by each defendant and also on a farm owned by an independent colono. Defendants own and operate jointly a railroad system used in the transportation of sugar cane from the farms to the central. Sugar cane shipped to the mill is loaded on cars

at the farms, then hauled to scales in front of the mill where it is weighed. The same cars and locomotives which carry the sugar cane to the scales are used to haul the sugar cane after weighing to a siding. From the siding the sugar cane is carried in the same cars but drawn by different engines to the mill proper.

All the plaintiffs herein involved worked for the defendants after October 24, 1938, the effective date of the application of the Act. The district court found that some of the plaintiffs were engaged in the operation, repair and maintenance of the transportation facilities of the defendants and that others worked at the mill. There is no dispute as to this finding. More specifically, these employees were engaged in the following types of work: messenger at the mill, construction and repair of rolling stock, fireman, brakeman on the locomotive, splitting wood for engines, repairing main railroad line, signaling at grade crossing, repairing of railroad carts and repairing of mill boilers. From the record it is clear that all the plaintiffs were employed by the central.

The defendants contend that the lower court erred in applying retrospectively the principle laid down in Bowie v. Gonzalez, 1 Cir., 117 F.2d 11, relating to coverage, for the reason that the district court in previous decisions rendered established a rule of property excluding said employees from the operation of the Act, and that, therefore, if said Act is applicable it should only be applied prospectively; that the lower court erred in holding transportation of sugar cane from defendants' farms to the mill was an activity subject to the provisions of the Act; that the lower court erred in holding that employees of the defendants engaged in the repair and maintenance of their transportation facilities were covered by the Act; and that the lower court erred in excluding certain testimony which defendants offered to introduce. The view we take of the case makes a consideration of this last contention unnecessary.

■ . We dealt with the problem of coverage as it relates to certain phases of the Puerto Rican sugar industry in the Bowie case, supra, but the precise problem which gives us concern was expressly excluded from the scope of our opinion. We have no difficulty in holding that insofar as the employees are engaged in the transportation of sugar cane from the farm of the independent colono and are engaged in the repair and maintenance of the transportation facilities, they are covered by the Act. We have expressly so held. We are concerned, however, with the more difficult problem of whether the employees who are engaged in the transportation of sugar cane from the farms of the defendants, who are the joint owners of the farms, the mill and the railroad system, and the employees who are engaged in the repair and maintenance of such transportation facilities are covered by the Act. This precise issue has never been decided by us.

On the basis of the peculiar facts presented to us we might include all the employees herein involved under the protection of the Act without a determination of the particular problem of whether employees who carry sugar cane exclusively from their employers' farms to their employers' mill are covered by the Act. For instance, (1) some of the employees involved in the present suit are covered by the Act because they are engaged in the hauling of sugar cane from the farm of the independent colono; (2) some of the employees are engaged in operations at the mill and are clearly covered by the Act, and (3) in view of the fact that these employees not only carry sugar cane from the jointly owned farms but also from the farms owned severally by these defendants, it might be said that the rule laid down in the Bowie case, supra, as to the hauling of the sugar cane from the farms of the independent colonos is applicable here. The same cars that are used in the hauling of sugar cane from the joint farms and the same employees who operate and maintain these cars are involved in the hauling of sugar cane and the maintenance and operation of the cars which haul sugar cane from the severally owned farms. While evidence was offered to show that segregation of the sugar cane from the farm of the independent colono was possible, none was offered to show a similar possible segregation as regards the sugar cane carried from the several farms. In fact, a contention of the defendants is that the farms owned jointly and severally comprise a single unit. If we were disposed to place our decision upon this ground all of the employees would be covered because of the fact that segregation of employees and facilities in the transportation of sugar cane from the several farms and joint farms under these facts is impossible. We place our decision, however, on the broader ground that the transportation of sugar cane is incident to

milling rather than to farming and therefore is not exempt under the Act.

The scheme of the Fair Labor Standards Act of 1938 is broad and comprehensive with the purpose of including all employees engaged in interstate commerce or in the production of goods for commerce, except those specifically exempted. The Act is remedial in its nature and should be liberally construed and the exceptions to the coverage of the Act should be narrowly construed. See Bowie v. Gonzales, supra, 117 F.2d page 16; Fleming v. Palmer, 1 Cir., 123 F.2d 749, 762; Fleming v. Hawkeye Pearl Button Co., 8 Cir., 113 F.2d 52. Speaking of employees similarly circumstanced, we said in the Bowie case, supra, at page 18 of 117 F.2d: "The employees in the instant case are typical factory workers or laborers engaged in maintaining industrial facilities. The exemption of agricultural labor from the operation of the Act is not admissible as an argument to exempt labor in an industry from its operation." And further, at page 19 of 117 F.2d: "Among the appellants' employees only those engaged in planting, cultivating and harvesting of the sugar cane are exempt." It is true that we later said in Gonzales v. Bowie, 1 Cir., 123 F.2d 387, that the employees engaged in carrying sugar cane from their employers' farms to their employers' mills were not covered by our opinion in the earlier case. In that case those employees did not prosecute an appeal from the judgment of the district court denying to them the advantages of the Act and we were not called upon to decide their claim. Our statement, however, was a significant indication of our understanding of the narrowness of the exemptions under the Act. The Act specifically provides for an agricultural exemption. 29 U.S.C.A. § 213(a)(6). Agriculture includes "farming in all its branches * * * and any practices * * * performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market." 29 U.S.C.A. § 203(f). It is clear from the quoted section that in order for an operation to be exempt from the application of the Act it is necessary that it be a farming operation, or incident to farming. What is incident to farming must be determined upon the basis of all the pertinent facts in the case, always keeping in mind the purpose of the Act and the circumscribed nature of the exemptions. (See in a different connection a method of interpretation of the exemption provisions of the Act, Fleming v. Hawkeye Pearl Button Co., supra, 113 F.2d at pages 56, 57.)

The mere fact that in this case the owners of the farms are also the owners of the mill and the transportation facilities does not make transportation an incident to farming. The issue, therefore, is not whether the same owners manage and control the mill, the farms and the transportation system, but rather whether transportation is incident to farming or incident to milling, an operation specifically within the purview of the Act.

It is, of course, true that it is easy to verbalize a distinction and say that transportation is incident to milling rather than to farming, but we do not lack guides to aid us in reaching our decision in the instant case. As noted, the workers are all employed by the central. Their names are found on the payroll sheets of the central. The locomotives and the cars have their depot at the mill. The locomotives and the cars move from the mill to the farms and back. The persons engaged in the transportation of sugar cane do no agricultural work. Further Section 7 of the Puerto Rican Act No. 112 of 1937 (Amended by Act 213 May 15, 1938) lends some support to the view that the Legislature of Puerto Rico considered transportation incidental to milling. This section provides: "The colono shall deliver his cane at the switch operating closest to the place where the cutting is being done, or at a point accessible for loaded trucks if the cane is not to be transported by railroad; and in case the central deems it necessary to change the location of the said points of delivery, it shall submit its reasons therefor to the Sugar Board created by this Act, and the Board shall decide in justice and equity the new locations after hearing the colonos affected * * *." The section just quoted would seem to indicate that the business of hauling the sugar cane from the farms of the independent colonos is considered part of the business of the central. We are not concerned here with the problem of farmers preparing their goods for market or sending their goods to market, or to storage, or to carriers to transport from farms to market. These are clearly exempt under the provisions of the Act. We would be

presented with a very different problem if the evidence disclosed that the heart of the transportation system and the situs of the employment of the workers were located at the farm. We must draw a line and wherever that line is drawn may appear arbitrary but when, as here, the evidence points in the direction which we have indicated, realizing as we do the purpose of the Act and the narrowness of the exemptions, we are constrained to conclude that the transportation of sugar cane is incident to milling. What we have in the case before us is a mill engaged in the processing of sugar cane and also engaged in the transportation of that sugar cane from farms to the mill. There seems no rational basis for saying that simply because the ownership of the mill and the farms is in the same hands that, therefore, those employees who are engaged in an activity which is separate and distinct from agriculture are exempt from the provisions of the Act. We, therefore, hold that all the employees before us are covered by the Act.

The defendants also contend that our opinion in the Bowie case, supra, should be applied prospectively because these defendants relied upon the district court's so-called rule of property. We consider this position to be untenable. Prior to our decision in that case there had been no interpretation of the applicability of the Fair Labor Standards Act to this set of facts except the decisions rendered by the district court. The district court is in no sense a court of last resort. While judgments of that court are entitled to great weight, they are subject to appeal and reversal. This is particularly true in the case at bar where the issue in doubt is one of statutory construction.

We find no merit in defendants' contention that liquidated damages should not be awarded in this case. The statute provides very clearly: "Any employer who violates the provisions of section 206 or section 207 of this title *shall* be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, *and in an additional equal amount as liquidated damages.*" (Italics supplied.) 29 U.S.C.A. § 216. This provision is mandatory in its statement and there is no authority in the district court to exercise discretion in awarding liquidated damages. This view has been uniformly followed in a number of district court de-

cisions. Thompson v. Daugherty, D.C., 40 F.Supp. 279, 284; Magann v. Long's Baggage Transfer Co., Inc., D.C., 39 F.Supp. 742, 750; St. John v. Brown, D.C., 38 F. Supp. 385, 390.

The judgment of the District Court is affirmed, with costs to the appellees.