**VIVES et al. v. SERRALLES.**

No. 3953.

Circuit Court of Appeals, First Circuit.

Nov. 13, 1944.

Frank Torres, of Ponce, Puerto Rico, for appellants.

Orlando J. Antonsanti, of San Juan, Puerto Rico, for appellee.

Before MAHONEY and WOODBURY, Circuit Judges, and FORD, District Judge.

MAHONEY, Circuit Judge.

This is an action to recover minimum wages and overtime compensation, liquidated damages, attorney's fees and costs, under the Fair Labor Standards Act of 1938, 52 Stat. 1060, 29 U.S.C.A. §§ 201–219. It particularly involves §§ 13(a) (6), 3(f) and 7(c). From a directed verdict of the District Court of Puerto Rico in favor of the defendant, the plaintiffs have appealed.

The only substantial question before us on this appeal is whether under the law and the evidence in this case the direction of a verdict was proper.

The facts are not in dispute. The defendant, Sucesion J. Serralles, an association or copartnership, owns and operates a sugar mill or central called Central Mercedita at Ponce, Puerto Rico, where sugar cane is taken to be ground and the sugar extracted. The sugar cane thus processed is grown on farms or colonias owned by the defendant. The defendant also owns and operates a railroad used in the transportation of the sugar cane from its outlying farms to the mill. As soon as the cane is cut on those farms it is gathered together and hauled to the particular farm's concentration point where a railroad siding is maintained. The cane is hauled to the concentration point in various ways; in small railroad cars pulled by oxen over portable tracks to a siding or switch where the cars are picked up by locomotives operated on the permanent tracks; in ox-carts to dumping stations at the concentration point to be reloaded into railroad cars by the loading gang, or to hoists or cranes which transfer the cane to the railroad cars mechanically; and in steel cars pulled by tractors to the hoists or cranes at the concentration point.

All the plaintiffs herein involved worked for defendant. One group of them, hereinafter referred to as group one, worked on defendant's various sugar farms other than the Colonia Mercedita, the farm on which its sugar mill known as Central Mercedita is located. It appears from a stipulation that they were engaged in the following types of work: laying portable tracks and moving them from one field to another; loading steel cars, portable track cars, or ox-carts in the field; picking up cane dumped by ox-carts and loading railroad cars at the sidings; handling winches, derricks or cranes at the loading points; and tractor operators, portable track car drivers, and ox-cart drivers.

The second group of employees, hereinafter referred to as group two, worked at Colonia Mercedita. At this farm the cane was hauled directly from the fields to a crane near the mill proper, which raised it to a conveyor running into the mill. The presence of defendant's mill on this farm eliminated recourse to a permanent transportation system in hauling in the cane. At the trial evidence was heard as to the activities of group two. No portable tracks were used at the Colonia Mercedita, and none of these plaintiffs was engaged in handling derricks or cranes. Apart from

this it is apparent from the record that no difference exists between the activities of plaintiffs in group two and those in group one covered by the stipulation. Manuel Villafane, a tractor operator, testified for himself and on behalf of fellow workers in group two, that he "worked in the transportation of sugar cane", hauling cars to the central where the plaintiffs would weigh them and then place them under the crane and that the crane operator would then "lift up the bunch of cane and drop the cane on the conveyor." His testimony on behalf of the ox-teamsters was to the same effect. After the weighing they placed the cane under the crane and hooked chains to the winch, "and then the winchman would raise the cane and would place it on the conveyor of J. Serralles." Villafane also testified, "the crane operators were hired by the mill, and the mill paid them", and a little later, "the field department paid my salary". Augustin Smith, plaintiffs' only other witness, testified for himself and some others, that he was engaged in hauling cars to the Colonia Mercedita from Colonia Bronce. Counsel conceded, however, that "Bronce is the name given to a parcel on one of the farms at Mercedita". So it appears that Smith and the others in his group were engaged in the same work as the other plaintiffs employed at the Colonia Mercedita.

As for Laureano Vargas, the remaining plaintiff, it was stipulated in the course of the trial that he was a worker "of the mill boiler", and that his claim was for overtime only. The question as to him, therefore, was one of law, whether he came within § 7(c) and was exempt from the overtime provisions of the Act.

The defendant's only witness substantiated in every material particular the evidence adduced for the plaintiffs. It is apparent that the only dispute between counsel at the trial was whether the activities described were "agricultural" and thus exempt from the operation of the act under § 13(a) (6)[1] and § 3(f)[2], or whether they were within the purview of the word "transportation" and thus within the operation of the Act. At the close of all the testimony, the defendant moved for a directed verdict. The motion was granted on the ground that "the testimony shows it is an agricultural operation, to wit, the harvesting of cane. Under other decisions and previous decisions of this court, the agricultural operation terminates when the cane passes to the transportation system or to the mill for grinding but it is another operation up to that". As to Vargas, the plaintiff who worked in the mill, the motion was granted because under § 7(c) he was not entitled to overtime.

In § 13(a) (6), the Act specifically provides for an agricultural exemption from the minimum wage and maximum hour provisions of §§ 6 and 7. Agriculture as defined in § 3(f) includes "farming in all its branches and among other things includes the cultivation and tillage of the soil * * * cultivation, growing, and harvesting of any agricultural or horticultural commodities * * *."

This court held in Calaf v. Gonzalez, 127 F.2d 934, 936, that employees engaged in the transportation of sugar cane from the farms of employers, who were the owners of the farms, the mill and the railroad system, were covered by the Act. In that case we said that "we place our decision, however, on the broader ground that the transportation of sugar cane is incident to milling rather than to farming and therefore is not exempt under the Act." The plaintiffs evidently rely on that language. But in the Calaf case the plaintiffs were engaged in the operation, repair, and maintenance of the company railroad in such types of work as the construction and repair of rolling stock, splitting wood for engines, repairing main railroad lines, signaling at railroad crossings, fireman and brakeman on the locomotive. We were not merely verbalizing a distinction in saying that "transportation * * * is incident to milling rather than to farming." We pointed to the following guides in reaching our decision: "the workers are all employed

[1] "Sec. 13. Exemptions
"(a) The provisions of sections 6 and 7 of this title shall not apply with respect to * * * (6) any employee employed in agriculture."
[2] "Sec. 3. Definitions * * *
"(f) 'Agriculture' includes farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities * * * and any practices * * * performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market."

by the central. Their names are found on the payroll sheets of the central. * * * The locomotives and the cars move from the mill to the farms and back. The persons engaged in the transportation of sugar cane do no agricultural work."

In this case the defendant contends that it owns many farms where it is engaged exclusively in the planting, cultivating, and harvesting of sugar cane; that once that is done transportation enters, and after transportation, milling, but before the sugar cane can begin to move over the transportation system to the mill it must first be "gathered in and brought to concentration points at the defendant's farm units". So far as the plaintiffs in group one are concerned, their activities begin at a point when the sugar cane has been cut in the field and continue up to the concentration point. To extend coverage to them involves broadening the concept of "transportation" so as to include the activities of workers right in the fields at a point just short of the actual cutting of the cane. So far as group two is concerned, the problem is the same. The plaintiffs in group one and group two were all employed and paid by the defendant's field department, whereas in the Calaf case the plaintiffs were paid by the mill. The area of activity to which coverage was extended in that case began at the mill and ended at the concentration point. The situs of the activities in which these plaintiffs were engaged is the field. If we rested our decision on the rationale of the Calaf case we would hold the concentration point as the line of demarcation between "transportation as an incident to milling" and "transportation as an incident to farming".

■ This case is controlled, however, by § 13(a) (6) and § 3(f) of the Act. § 3 (f) provides unequivocally that agriculture includes planting, cultivating, and harvesting. Interpretative Bulletin No. 14, promulgated by the Administrator of the Wage and Hour Division, defines "harvesting" to include "all operations customarily performed in connection with the removal of the crops by the farmers from their growing position in the field". This definition conforms with our view that the activities of the plaintiffs in this case are agricultural and is of some evidentiary value in support of our conclusion. A. H. Phillips, Inc., v. Walling, Adm'r, 1 Cir., 144 F.2d 102. We have no difficulty in holding that they are farmers engaged in the harvesting of sugar cane and that the harvesting operation extends as far as the concentration point.

The Sugar Act of 1937, 50 Stat. 903, 7 U.S.C.A. § 1100 et seq., in § 301(b) empowered the Secretary of Agriculture to fix reasonable wages for persons employed in the production, cultivation, and harvesting of sugar cane in Puerto Rico. Under that authority wage rates were determined for the following harvesting operations: cartmen in harvest work, crane operators, dumpers, portable track handlers, railroad or portable track car loaders, and cane cart or truck loaders.[3] It is significant that insofar as wages are concerned, the Puerto Rican sugar industry is affected by two laws. The dividing line between the coverage of the two acts should be clear and well defined. The concentration point would seem to be a useful point of cleavage as well as one that is clearly justified in the light of § 13(a) (6) and § 3(f) of the Fair Labor Standards Act. These plaintiffs as agricultural laborers are not within the coverage of the Fair Labor Standards Act but they are specifically provided for under the Sugar Act, supra.

■ The question before us as to Laureano Vargas, the remaining plaintiff, involves the proper construction of § 7(c) of the Act. The contention is made that this section exempts the employer from paying overtime "solely for a period of not more than fourteen weeks", and that Vargas is entitled to be paid time and a half compensation for the overtime worked over and above the fourteen weeks' exemption period. We find no language in the Act which supports that contention. In unqualified terms the Act provides that "In the case of an employer engaged in * * * the processing of * * * sugarcane * * * the provisions of subsection (a) shall not apply to his employees in any place of employment where he is so engaged." That this exemption is not limited to fourteen weeks is made plain by what immediately follows: "and

---

[3] Determination issued January 24, 1944, of fair and reasonable wage rates for persons employed in the production, cultivation, or harvesting of sugarcane in Puerto Rico during the Calendar Year 1944, pursuant to the provisions of subsection (b) of section 301 of the Sugar Act of 1937, as amended, and Executive Order 9322, issued March 26, 1943, as amended by Executive Order 9334, issued April 19, 1943, 50 U.S.C.A.Appendix, § 601 note.

in the case of an employer engaged in the first processing of, or in canning or packing, perishable or seasonal fresh fruits or vegetables * * * the provisions of subsection (a), during a period or periods of not more than fourteen workweeks * * * shall not apply * * *."

The plaintiffs urge that the District Court erred in encroaching upon the province of the jury in directing a verdict for the defendant, and that the court became the trier of the facts and practically denied plaintiffs a right to a jury trial. In disposing of this aspect of the case, it is sufficient to say that the record reveals no controverted issues of fact for submission to the jury. The motion for a directed verdict raised a question of law. In granting that motion the court below properly decided that the undisputed evidence showed that the plaintiffs in groups one and two were employed in agriculture and under § 13(a) (6) were not entitled to the benefits of §§ 6 and 7 of the Act, and that the remaining plaintiff, whose claim was for overtime only, was not entitled to it under § 7(c).

The judgment of the District Court is affirmed.