ARAGON et al. v. UNEMPLOYMENT COMPENSATION COMMISSION OF TERRITORY OF ALASKA et al.

No. 10425.

Circuit Court of Appeals, Ninth Circuit.

May 15, 1945.

448

Andersen & Resner, George R. Andersen, and Herbert Resner, all of San Francisco, Cal., for appellants.

E. Coke Hill, of San Francisco, Cal., for appellees Unemployment Compensation Commission of Territory of Alaska.

Marshall P. Madison, Francis R. Kirkham, Melvin E. Mensor, and Pillsbury, Madison & Sutro, all of San Francisco, Cal., and Faulkner & Banfield, of Juneau, Alaska, for appellees Alaska Packers Ass'n et al.

Before DENMAN, HEALY, and BONE, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a judgment of the District Court of the United States for the Territory of Alaska, rendered in a proceeding to review a decision of the Unemployment Compensation Commission of the Territory. Under the Alaska Unemploy-ment Compensation law[1] appellant employees, hereafter called appellants, were admittedly entitled to unemployment compensation from the Commission for the several months' period fixed by the Commission's Regulation 10 of the fishing season of 1940 at the fishing and canning plants of the appellee corporations, hereafter called Canners, at Chignik, Karluk and Bristol Bay, Alaska.

The beneficent purpose of the Unemployment Compensation Law of Alaska is stated in its "Declaration of Territorial Public Policy," as follows:

"Economic insecurity due to unemployment is a serious menace to the health, morals and welfare of the people of this Territory. Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the Legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. The achievement of social security requires protection against this greatest hazard of our economic life. * * *"

The question here for determination is whether eight weeks' time should be deducted from the admitted period of unemployment and appellants' awards reduced by the compensation otherwise due for that period by reason of a claimed labor dispute in active progress for the eight weeks at the "factory, establishment or other premises" of the Canners, within the meaning of an exceptive provision of the Act, as follows:

"Section 5. Disqualification for Benefits. An individual shall be disqualified for benefits:

\* \* \* \* \*

"(d) For any week with respect to which the Commission finds that his total or partial unemployment is due to a labor dispute which is in active progress at the factory, establishment or other premises at which he is or was last employed; provided, that such disqualification shall not exceed the 8 weeks immediately following the beginning of such dispute; * * *."

Such an exception to the beneficence of the Act must be strictly construed. In the recent case of A. H. Phillips, Inc. v. Walling, 65 S.Ct. 807, that Court considered the question of the rule of construction of the word "establishment" in a simi-

[1] Alaska Stats., Ch. 4, Extraordinary Session Laws of 1937, as amended by Ch. 1 and 51, S.L.1939—hereafter designated Act.

lar exception to the Fair Labor Standards Act of 1938, 52 Stat. 1060, 1067, 29 U.S.C. § 213(a) (2), 29 U.S.C.A. § 213(a) (2), that the wage and hour provisions of the Act shall not apply with respect to " 'any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce.' The issue posed by this case is whether employees working in the warehouse and central office of an interstate grocery chain store system are 'engaged in any retail * * * establishment' within the meaning of Section 13(a) (2) so as to be exempt from the wage and hour provisions."

The Court states the rule of construction of exceptions to such humanitarian and remedial legislation, as here the Alaska Compensation Law is declared to be, as follows:

"The Fair Labor Standards Act was designed 'to extend the frontiers of social progress' by 'insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.' Message of the President to Congress, May 24, 1934. *Any exemption from such humanitarian and remedial legislation* must therefore be *narrowly* construed, giving due regard to the plain meaning of statutory language and the intent of Congress. To extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretative process and to frustrate the announced will of the people. We accordingly agree with the two courts below that the exception contained in Section 13(a) (2) is inapplicable in this case and that the employees involved are entitled to the benefits of the wage and hour provisions of the Act. We hold, in other words, that the warehouse and central office of petitioner's chain store system cannot properly be considered a retail establishment within the meaning of Section 13(a) (2)."

In so holding, the Supreme Court states that "Prior to the adoption of the Fair Labor Standards Act the term *'establishment'* was used in the sense of *physical place* of business by many census reports, business analyses, administrative regulations, and state taxing and regulatory statutes. * * *" (Emphasis supplied.)

Prior to the Phillips decision this circuit held in Canadian Pac. R. v. United States, **9 Cir.,** 73 F.2d 831, 834, a similar strict construction of a proviso excepting certain carriers from liability for overtime pay to employees of the Emigration Service under the Act of March 2, 1931, 8 U.S.C.A. § 109a, and in Reynolds v. Salt River Valley Assn., 9 Cir., 143 F.2d 863, 868 with reference to an exception to the Fair Labor Standards Act. See also same holding regarding excepting provisos in Fair Labor Standards Act in Eighth, Third and First Circuits: Fleming v. Hawkeye Button Co., 8 Cir., 113 F.2d 52, 57; Fleming v. A. B. Kirschbaum, 3 Cir., 124 F.2d 567, 572; Calaf v. Gonzalez, 1 Cir., 127 F.2d 934.

█ It is obvious that a workman seeking to recover under the Alaska Act would not be denied recovery unless, in addition to his unemployment, he also proved that he had no "disqualification for benefits." We have held that the burden of proving that an unemployed person, otherwise entitled to the compensation, is deprived of it by reason of falling within the exception is upon the party asserting it, here the appellees. Canadian Pac. R. v. United States, supra; Reynolds v. Salt River Valley Assn., supra; Schlemmer v. Buffalo, Rochester etc. R., 205 U.S. 1, 11, 27·S.Ct. 407, 51 L.Ed. 681.

█ It does not deed the application of the rule of strict construction to construe the words "factory" and "establishment" placed before the words "or other premises" in Section 5(d) of the Alaska Act as ejusdem generis with the concluding phrase and that the principle of noscitur a sociis applies. Strict construction would require such a construction as the Supreme Court made of the word "establishment" in a similar exception, supra, as the "physical place." Webster's New International Dictionary, Second Edition, 1940, defines the word "premises," the plural of the word "premise," as

"Premise * * * 4. *pl. Law.* The property conveyed in a deed; hence, *in general* [emphasis ours], a piece of land or real estate; sometimes, esp. in fire-insurance papers, a building, or buildings on land; as, to lease *premises;* the *premises* insured. Sometimes loosely applied to personal property, as a vessel."

The question then is whether appellees have established their burden of proof that there was a labor "dispute which is in active progress at the factory, establishment or premises at which he is or was last employed."

The three appellee corporations, called the Canners, maintain salmon fishing and canning establishments in Alaska at Chignik, Karluk and Bristol Bay. The establishments consist of canning factories and the premises surrounding them with quarters for the fishermen and canners, fishing boats and housing for the supplies and equipment of the establishments and their employees. Appellants, over 1300 men, residing in California, had been the employees of the Canners at these establishments in the previous fishing season of 1939. They had been carried to San Francisco on the vessels chartered or owned by the Canners. Their employment, as shown by paragraph 15 of the 1939 agreement between the Canners and the appellants, began when the employees boarded the vessels bound for Alaska and terminated on arrival of the vessels on return to San Francisco, unless leaving the employment in Alaska.[2]

Appellants were last employed under their contract for the 1939 fishing seasons in Alaska. In that contract there are 37 paragraphs with over a hundred agreements between the 1300 employees and the Canners concerning the rates of pay, overtime, food, housing, racial discrimination, and numerous other relations of the employers and employees in the canning and fishing establishments in Alaska and on board the vessels. Any one of these agreements well may have produced a labor dispute at the establishments or on the vessels or adjacent thereto. Section 5(d) excepts the employees in all of these possible hundreds of labor disputes from the compensation of the Act for a maximum of 8 weeks. There is no merit to the contention that the exceptive section 5(d) must be intended to include disputes other than "at" such premises to give meaning and effect to the compensation Act.

The Canners' and the Commission's brief attempt to meet appellants' contention only by an inferential treatment of Section 5(d) as if the words "at the factory," etc. were

to be stricken from their place after the words "active progress" and transposed above in the paragraph after the word "unemployment." With such striking and transposing the paragraph would appear

"For any week with respect to which the Commission finds that his total or partial unemployment—at the *factory, establishment or other premises at which he is or was last employed*—is due to a labor dispute which is in active progress ~~at the factory, establishment or other premises at which he is or was last employed.~~"

Even in the absence of the rule of strict construction we would not be justified in so reforming the phrases of the Act. Applying the rule, it is plain that such construction is not valid.

■ That is to say, the premises at which the appellees must prove the dispute was in active progress are such premises as the land and "physical" structures and fishing vessels in Alaska or the Canners' vessels on the return voyage to San Francisco at which appellants were last employed.

Under the provisions of the Alaska Unemployment Compensation law appellants' claims had been heard by a referee appointed by the Commission. At the opening of the hearing the appellants stated three contentions, of which the third we deem determinative. It is a pure question of law on the facts adduced specifically referring to Section 5(d) and the place at which the dispute is in active progress. Appellants' three contentions there were

"Mr. Resner [for employee appellants]. Well, I want to make a brief statement as to what our position is.

In the first place, we are contending this is not a labor dispute but simply a refusal on the part of the Alaska Packers to negotiate an agreement with the Union for the present season in Alaska affecting the Alaska Cannery Workers, Local No. 5, of San Francisco, and *that is not a labor dis-*

---

[2] "15. On days of arrival or departure the hour twelve (12) midnight shall be considered the basis for the computation of the payroll. On days of arrival or departure one full day shall be paid irrespective of exact time of arrival or departure with regards to the hour of 12 midnight. Wages shall commence on the day of departure and terminate on the day of return to the port of dispatching, except as herein otherwise provided.

"In the event that any employee does

not elect to return to original port of embarkation upon a suitable vessel by and at the direction of the Company at the termination of the season, his employment shall be considered terminated and he shall be paid all wages due him within forty-eight (48) hours, subject to all provisions of this agreement, in which event the Company will be relieved of all obligations to the employee for return transportation."

*pute;* and, therefore, these men are just out of work because of the refusal to enter into this agreement and are entitled to their benefits.

We want to contend, secondly, if under any circumstances this can be considered a labor dispute it is not such labor dispute *within the meaning of the Act* for these reasons: *This is a seasonal* industry and the contracts heretofore have been signed for one year—have been negotiated and signed anew for each season. The contract of last year had expired and a new contract was to be signed for or negotiated for the coming season. There was no contract arrived at. *And we contend the failure or the inability to arrive at a contract does not constitute a labor dispute.*

Third, *going to the Act itself, referring to Section 5(d),* we contend this is not a labor dispute which is in active *progress at the factory, establishment or other premises at which the workers were last employed.*" (Emphasis supplied.)

The referee states the controversy actually submitted to him to have been stipulated by the parties to be confined to the "sole question" as to the dispute in progress "at" the Alaska plants, as follows:

"Pursuant to stipulation and understanding with Counsel for the respective parties the sole question before the Referee is to determine whether or not the facts show that at the commencement of the canning season in 1940 a labor dispute *was in active progress at the plants at Karluk, Chignik and in Bristol Bay being the plants operated by the Employers in 1939 and at which the members of the Union were then employed.*" (Emphasis supplied.)

Appellees offered no testimony before the referee as to any dispute at the ships in which any appellant was last employed. No further testimony was taken at the subsequent proceeding before the Commission or the district court. Hence the appellees have not proved appellants within any excepted dispute at the appellees' ships where they were last employed.

On the issue, so restricted, the referee decided adversely to the contentions of appellants, (a) that there had been no labor dispute and (b) if there were it did not exist at the Alaska plants. The referee found that there had been a labor dispute between appellants and the Canners, but found that it was in active progress for but six days *"with reference* to the Karluk plant operated in 1939 by the Alaska Packers Association" and for but twelve days *"involving operation* of the Chignik plant operated by the Alaska Packers Association" and that "at the time of the commencement of the season in Bristol Bay no labor dispute was in active progress at any of the plants operated in that District in 1939." (Emphasis supplied). He decided that the Karluk employees should be denied six days' compensation and the Chignik employees twelve days.

■ It is our opinion that the referee erred in holding against appellants on the question of law under consideration that the words of Section 5(d) "at the factory, establishment or other premises" mean "with reference to" or "involving operation of" such premises.

The evidence shows that early in 1940 a dispute arose between appellants and the Canners concerning the terms of the future fishing and canning employment of appellants for the approaching 1940 season at above mentioned establishments in Alaska and on the voyages to and from the canneries there. For the purpose of this opinion we assume, but do not decide, that it continued during the eight weeks in question. The beginning and entire activity of the dispute was "at" some unnamed place or places in San Francisco, California, and, it is claimed by the Canners, in part "at" some unnamed place in Seattle, Washington. Obviously, the dispute was not at the premises of any of the Alaska establishments.

■ The former Karluk and Chignik employees took no appeal to the Commission from the referee's decision. We hold that there should be at least these deductions from the claims of the Karluk and Chignik employees, deductions which they apparently were willing to accept if the controversy there ended. There was no reason for an appeal by the Bristol Bay men.

However, the controversy continued. The referee's decision was appealed to the Commission by the Canners, the Commission stating the Canners' contention before it to involve the question of the premises "at" which the dispute was in progress as follows:

"The employers-respondents claim that the unemployment of the claimants-appellees is due to a labor dispute which was in active progress *at the factory, establish-*

ment or other premises of which said claimants, and all of them, were last employed during the seasonable working period of the salmon industry of the Territory of Alaska, as set forth in said Commission's Regulation No. 10." (Emphasis supplied.)

The Commission considered the appeal on the record, made for it by the referee, of the parties' contentions and stipulation and of the evidence taken on the stipulated issue. It thus had before it the contention of the insured men that

"Third, *going to the Act itself, referring to Section 5(d),* we contend this is not a labor dispute which is in active *progress at the factory, establishment or other premises at which the workers were last employed*" (emphasis supplied),

and the stipulation of the parties confining the question to the existence of a dispute at the Alaska plants as follows:

"Pursuant to stipulation and understanding with Counsel for the respective parties the sole question before the Referee is to determine whether or not the facts show that at the commencement of the canning season in 1940 a labor dispute *was in active progress at the plants at Karluk, Chignik and in Bristol Bay being the plants operated by the Employers in 1939 and at which the members of the Union were then employed.*" (Emphasis supplied.)

The Commission evidently agreed with the referee that since the dispute was undeniably "with reference to" or "involving operation of" the Alaska plants in the future, it was a labor dispute then existing "at" the plants within section 5(d). Hence it confines its finding to the mere existence of the dispute during the eight weeks as follows:

"That there was an active labor dispute existing between said parties at the opening of the season; that said dispute continued, and that paragraph (d) under Section 5, under the title 'Disqualification for Benefits' provides * * * [followed by the words of Section 5(d)]".

Obviously, a statement that a statute exists and setting forth its terms is not a

finding of fact that the dispute between the appellants and the Canners was actively pursued "at" the plants in Alaska named in the stipulation. In any event, there was no evidence to support such a finding had it been made. The dispute's existence was "at" some place in California and possibly in Washington.

The appellants petitioned the district court for a review of the Commission's decision. As before the Commission, they contended in assignments (a) to (c) that there was no dispute in active progress within the meaning of the word "dispute" in Section 5(d), and also, in assignment (d), that, assuming its existence, it was not "at" the premises of last employment as follows:

"d. The decision is in error in that there is neither finding nor conclusion that petitioners' unemployment during the 1940 salmon canning season was 'due' to a labor dispute *in active progress* AT *the premises where last employed (which means at the conclusion of the 1939 season), and not 'due' to other causes.*" (Emphasis supplied.)

The hearing before the district court was upon the record before the referee stating the position of the insured men. The district court affirmed the Commission's decision and, in its finding 10,[3] found against appellants' claim of error "d" supra, and that a labor dispute was in active progress at the Alaska canneries. This although throughout the proceedings in the three tribunals it was admitted that whatever dispute existed began and was carried on in either California or in Washington.

This appeal followed, appellants assigning here as error, inter alia, that finding 10 "that this labor dispute was in active progress at the cannery at which they were respectively last employed," is not supported by the evidence.

Appellants' brief here, at page 3 thereof, states the question as to the premises of the existence of the dispute as it was in issue before the referee, the Commission, and the district court

"Were appellants unemployed during the

---

[3] "10. That the unemployment of claimants in the 1940 fishing and canning season, and the whole thereof, was due to a labor dispute existing between the employers, the respondent companies herein, and the claimants, and that *this labor dispute was in active progress at the cannery at which they were respectively last employed,* and there was an active labor dispute between the claimants and the respondent employers during the entire canning season as defined by the Commission at the respective canning plants at Chignik, Karluk and various points in Bristol Bay, Alaska." (Emphasis supplied.)

1940 Alaska salmon season because of a labor dispute in active progress at the establishment at which they were last employed within the meaning of Section 5(d) of the Act?"

Appellants' brief later answers the question, stating in its caption of section E of its argument

"E. There was no labor dispute in active progress at the 'factory, establishment, or other premises' where appellants were last employed."

The argument is summarized as the last times appellants worked at any of the employers' plants was in 1939. When the 1939 season ended appellants ceased to be employees of the employers. Work never started at any of the employers' Alaska plants during 1940. It follows that there was no labor dispute at the place of last employment.

The Commission's brief recognizes the challenge of the question of appellants' brief by repeating it in full. Instead of construing the words of Section 5(d), the Commission apparently again assumes it to be sufficient that it is conceded that the dispute was "with reference to" or involved the "operation of" the plants referred to in the stipulation for the approaching season. Its brief says of the appellants' challenging question as to the place of the dispute, "We think that statement not entirely accurate, that it is a little too broad," and restates the question, omitting all reference to the *premises* "at" which the dispute was in active progress, as follows:

"We think the questions to be decided in this Court are: Is there substantial evidence to support the findings of fact of the Commission and the District Court, and, can it be said as a matter of law that the Commission and the District Court were in error in finding that appellants' unemployment was due to a labor dispute which was in active progress during the weeks for which appellants claim compensation?"

At the hearing here counsel for appellants, in obvious distress at a sudden illness of the preceding night in his family, relied upon his brief. The court itself then pressed on counsel for the appellees the question so raised by appellants' brief concerning the construction of the words of Section 5(d). Appellees' counsel answered that they did not consider this question before us—and this with appellants' assign-

ment of error here as to finding 10 of the district court and the issue raised by the question and argument in appellants' brief, which question is repeated in its exact words in the Commission's brief.

To summarize, the attempt of the Commission here to treat the contention that the question of the "establishment at which they were last employed" as not under consideration throughout the litigation is in direct contradiction (1) to appellants' opening contention "Third" and to the stipulation of counsel in the record before the referee upon which the entire proceeding is based; (2) to the Commission's statement, supra, that this was the contention upon which the Canners appealed to the Commission; (3) to the ground "d" of appellants' petition to the district court for review, supra; (4) to appellants' claim of error here in finding 10 of the district court, supra, holding there was such a dispute but at the Alaska canning plants, and (5) to the brief of appellants here. It seems clear to us that the record in this regard cannot be misunderstood by anyone as showing that the Commission, either here or in the three prior hearings in the proceeding, has not had its day in court on the question of the construction of Section 5(d) of the Alaska Act.

■ We hold that appellees have not maintained their burden of proof that during the first eight weeks of the 1940 employment period there was a labor dispute at the premises of the appellants' last employment. We further hold that regardless of the burden of proof, the evidence establishes affirmatively that no such dispute existed at the stipulated Alaska canning plants during appellants' admitted unemployment.

Because of the lack of appeal of the Karluk and Chignik employees from the referee's decision, a deduction must be made from the award for 12 days at Karluk and the 6 days at Chignik. There should be no deduction, because of the dispute, from the claims of the Bristol Bay employees.

Section 6(i) of the Act, providing for this "judicial proceeding" in the district court and appeal to this court, requires that

"Upon the final determination of such *judicial proceeding* the Commission shall enter an order in accordance with such determination." (Emphasis supplied.)

It is our determination that the evidence shows appellants are entitled to their compensation for their unemployment in the fishing season of 1940 above considered, without deduction by reason of the labor dispute here in question, other than that for the Karluk and Chignik employees, held to be deducted by the referee as above recited; and that the Commission shall enter an order in accordance with such determination.

The judgment of the district court is reversed and the district court instructed to enter a judgment in accord with this opinion.

Reversed.

HEALY, Circuit Judge. (dissenting).

The majority opinion assumes (1) that the unemployment for which appellants sought compensation was due to a labor dispute, (2) that the dispute was in active progress at the commencement of the 1940 season, and (3) that it continued indefinitely thereafter. Since the whole effort on the part of appellants has been to refute one or the other of these propositions, it would seem that the assumptions should result in a decision favorable to the Commission. However, my associates have reversed the Commission on a theory volunteered by themselves, namely, that the dispute was not in progress at the right place.

The case arose under the following circumstances. For some years prior to 1940 the Union of which appellants are members had contracts with the canning companies in respect of wages and terms of employment. After the close of the 1939 season the existing agreement was cancelled so that it became necessary to negotiate a new contract for the 1940 season. Negotiations to this end were initiated at San Francisco but no agreement was reached, with the result that the San Francisco fleet did not depart for Alaska and the seasonal enterprise was eventually abandoned. Claims having been made for unemployment benefits, the Alaska Commission at first denied them and then, on application of the claimants, appointed a referee to hear testimony.

Upon the evidence taken the Commission found "that there was an active labor dispute existing between said parties at the opening of the season; that said dispute continued, and that paragraph (d) under Section 5 [of the territorial act] provides: That any individual shall be disqualified 'for any week with respect to which the Commission finds that his total or partial unemployment is due to a labor dispute which is in active progress at the factory, establishment or other premises at which he is or was last employed; provided, that such disqualification shall not exceed the 8 weeks immediately following the beginning of such dispute.'" On the basis of these findings the Commission awarded unemployment benefits, exclusive, however, of the first eight weeks following the official opening dates of the season.

Implicit in this decision is the finding that the dispute, within the intendment of the statute, was in progress at the "establishment or other premises" at which claimants are or were last employed. Appellants do not contend otherwise, nor do they claim that the decision was in this respect erroneous. Unless we choose to misunderstand we can not mistake the propositions of law and fact upon which review of the Commission's determination was sought. In their petition filed below appellants, as they were required to do by Section 6(i) of the territorial act, set out their objections in extenso, the statement of them covering some seventeen pages of the printed record. The same argumentative exceptions are incorporated in identical language in appellants' brief here. Following are the grounds upon which the Commission's decision is challenged: It is claimed, first, that the dispute in respect of the terms of the seasonal contract was not a labor dispute because there was no strike or picketing and because the employer-employee relationship did not presently exist. Secondly, it is contended that, if there was a labor dispute, it had ceased to be in active progress either prior to or within a matter of days after the opening of the season, that is to say, on the "deadline" dates set by the canners for the reaching of an agreement.[1]

---

[1] These asserted deadline dates were as follows: For the Karluk expedition, April 10; for the Chignik operation, April 12; for the Bristol Bay operation, May 3. Under Regulation No. 10 of the Commission the seasons for these three areas opened respectively on April 5, April 1, and May 5. On the basis of the deadline dates, the referee found that the labor dispute ceased to be in active progress five days after the opening of the Karluk operation, twelve days after the Chignik opening, and two days prior to the Bristol Bay opening. Ac-

The record shows that these were the propositions of law and fact pressed upon the Commission as well. In their initial communication addressed to the Commission under date of May 11, 1940, appellants outlined their contentions substantially as above and requested that a hearing be had before a referee to determine whether a labor dispute "actually exists." The opinion of the referee contains no hint of any contest or difference of opinion concerning the question here made the basis of decision. His findings proceed on the theory that the claimants were disqualified under the statute for such period as they actively engaged in a labor dispute affecting the seasonal operations at the plants. Appellants did not challenge the referee's findings in this particular or ask the Commission to review or modify them. In short, they have at no time contended that the law is as this Court holds it to be, nor have they raised any legal or factual issue concerning the place of the dispute.

This case is not one originally cognizable by the court. It is purely a review proceeding. The act provides [Section 6(h)] that judicial review of a decision "shall be permitted only if any party claiming to be aggrieved thereby has exhausted his administrative remedies." I think it is clear that no issue may be urged on review that was not squarely presented to the Commission. The court, no less than the parties, is foreclosed from injecting issues not so presented. Yet this court has not only done that, it has decided the spurious issue without benefit of argument on the part of counsel, and without giving the Commission an opportunity to be heard.

The Commission was not unmindful of the policy of the act. On the contrary, it called attention to the phrase "involuntary unemployment," as found in the preamble, and to a portion of the preamble which my associates have neglected to quote, namely: "The Legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this Territory, require the enactment of this measure under the police power of the Territory, for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own." It was the view of the Commission that appellants were not the victims of "involuntary unemployment," that is to say they had remained idle as a matter of choice. It was thought that in light of the declared policy of the act and of the express provisions of Section 5(d) they were disqualified as beneficiaries for the specified period.

Being of the belief that the question made the basis of the majority decision is not properly before us, I refrain from discussing it beyond saying that it distorts the statutory policy and ignores the actualities of this seasonal operation. I may add that if the point had real merit it seems unlikely that the astute and resourceful counsel who represent appellants would have failed to urge it. The findings of the Commission on the questions actually presented to it are supported by evidence, and I see no sufficient reason for disturbing the administrative decision.

cordingly he denied unemployment compensation for the Karluk employees for six days, for the Chignik employees twelve days, and awarded full compensation to the Bristol Bay employees.

The Commission, however, on the basis of evidence that the negotiations continued indefinitely beyond the deadline dates, found that the labor dispute continued actively after those dates, and it accordingly overturned the referee's ruling.