RUFO M. HERNÁNDEZ ET AL., Complainants, Appellees, and Appellants, *v.* MANUEL A. DEL VALLE ET AL., Respondents, Appellants, and Appellees.

No. 12757. Decided November 15, 1962.

*Sifre, Ruiz-Suria & Sifre,* and *Baltasar Corrada del Río* for respondents, appellants, and appellees. *Antonio Figueroa Rivera* for complainants, appellees, and appellants.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Dávila.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

 The judgment in this case was rendered on October 20, 1959 and notified the following day. To review the same, both parties appealed within five days after entry thereof. On that date Act No. 115 of June 26, 1958 —4 L.P.R.A. § 37 (1961 Supp.)—which amended § 4 of the Judiciary Act of 1952, establishing a new proceeding to appeal to this Court, was already in force. In *Andino* v. *Fajardo Sugar Co.*, 82 P.R.R. 81 (1961), we held that ". . . insofar as the judgments rendered by the Superior Court in actions for wages and unlawful detainer are concerned, the appropriate proceeding to bring them to the consideration of the Supreme Court is the one provided in Act No. 115 of 1958, *supra*, that is, the discretionary review, unless a substantial constitutional question is involved, in which case the remedy of appeal may be invoked." Since the instant case does not raise a constitutional question, the proper procedure was to file a petition for review. However, in the *Andino* case we said at p. 91 that "once the circumstances of each case are considered and in order to adequately protect the rights of the litigants [citation], we shall timely provide for the appeals taken in actions for wages and unlawful detainer in which the proceeding indicated in this opinion was not followed." And in footnote 12 we pointed out that we referred to those cases in which "the notice of appeal was filed, without setting forth the grounds therefor, within five days after notice of the judgment was filed." And that is the situation in the case at bar. We will therefore assume jurisdiction to entertain the appeals taken.

Having disposed of the jurisdictional question, we turn to consider the case on the merits.

A group of laborers claimed from defendants the difference in wages between the agricultural and the industrial phase of the sugar industry provided by Minimum Wage Decree

No. 3. Defendants operated several sugar mills, but they were also engaged in the cultivation of sugar cane. A majority of the claimants-laborers worked in a shop repairing the tractors used for hauling the cane from the field to the concentration point, from where it was transported to the mill. Three of the claimants, Pedro Charles, Rafael Peña, and Rogelio Pérez, worked during the grinding season and until the termination of the 1954 crop operating trucks loaded with cane from Colonia Sabana to Central Juncos. After that date these laborers as well as the other claimants rendered services in the shop. The claimants were paid as if they were agricultural laborers. They allege that they are entitled to the compensation provided for the industrial phase.

The provision invoked is that of Minimum Wage Decree No. 3 which defines sugar industry. It appears in 29 R.&R.P.R. 245n-32. It provides as follows:

"The sugar industry, to which this decree applies, is defined as follows: The production of sugar cane in its agricultural and industrial phase, including, but not by way of limitation:

"(1) Agricultural phase: Preparation of the soil, planting, cultivation, harvesting, *transportation of the cane when performed by the farmers themselves,* and any other operation of an agricultural nature; and

"(2) Industrial phase: *The transportation of the cane when performed by the sugar central,* the weighing, the preparation and grinding of the cane, the elaboration, handling, packing, weighing and warehousing of sugar and any other operation related to the industrial phase of the manufacture of sugar from the moment the cane is weighed in the scale of the central until the sugar is removed from the warehouse of the central; provided, that the transportation of sugar, when performed by the centrals themselves, shall be considered as part of the industrial phase." (Italics ours.)

The claimant laborers maintain that under the authority of this provision they are entitled to compensation for their work on the basis of the industrial wage, alleging that the

hauling of the cane from the field to the concentration point is the transportation contemplated in the decree, and that since the entity which operates the mill is the owner of the plantations, the mill itself performs the transportation, and it is therefore under obligation to pay the wage provided for the industrial phase to all the laborers who render services hauling the cane from the field to the concentration point. This includes the operators of tractors and those who repair them.

In deciding the dispute, the trial court determined that the hauling of the cut cane from the field to the concentration point, from where it is transported to the mill, is not the "transportation" defined in the decree invoked by claimants. The trial court concluded that the activity of hauling the cane from the field to the concentration point is part of the harvesting, and that "transportation," according to the decree, is the activity of hauling the cane from the concentration point to the mill. The respondent court stated that "traditionally, the process of hauling cane from the field to the railroad sidings had been considered as work of transporting cane which is part of the work of harvesting of the sugar industry." According to the trial court, "the operations of hauling cane from the field to a concentration point is considered as part of the agricultural phase known by the name of harvesting. The transportation phase begins at the station or concentration point and ends in the mill's *batey*, from where it is transported to the mills for processing into sugar and molasses."

The evidence which the trial court had under consideration establishes that in the sugar industry the hauling of cane from the fields to the concentration point is considered part of the harvesting of the cane. The activity of hauling it from this concentration point to the mill's *batey* is the "transportation" contemplated in the decree. If the latter activity is performed by the colono, the compensation therefor is the wages provided for the agricultural phase;

but if it is performed by the mill, compensation is paid on the basis of the rates fixed for the industrial phase. The fact that the entity which performs the agricultural task is the same entity which operates the mill is immaterial. *Maneja* v. *Waialua Agricultural Co.*, 349 U.S. 254 (1955); *cf. Calaf* v. *González*, 127 F.2d 934, 937 (1st Cir. 1942). Since the hauling of the cane from the fields to the concentration point is part of the harvesting process, the wages established in the decree for the agricultural phase control, notwithstanding the fact that the agricultural activity is performed by the same entity which operates the mill.

Although the cases dealing with the applicability of the Fair Labor Standards Act are not strictly in point, in construing the definition of "agriculture" contained in the statute they have determined that the act of hauling the cane from the field to the concentration point, from where it is transported to the mill, is an activity of the agricultural phase; specifically it is part of the harvesting. *Vives* v. *Serrallés*, 145 F.2d 552 (1st Cir. 1944); *cf. Calaf* v. *González, supra.* Evidently, in wording the definition the framers of the Act took into account the activities which are traditionally considered as part of the agricultural phase. Obviously, the courts which have considered the controversies arising in connection with the definition of agriculture appearing in the Federal Act have also taken them into account.

■ Defendants appealed from that portion of the judgment ordering them to pay to three laborers the difference in wages claimed for the period during which they worked as truck operators transporting cane from Colonia Sabana to Central Juncos. Obviously, they were entitled to compensation at the rates provided for the industrial phase, since they were engaged in the activity of hauling cane from the concentration point to the mill. And this activity, we have already said, constitutes "transportation" for the purposes of the decree under which the wages must be paid at the rate

fixed for the industrial phase when such activity is performed by the mill.

The judgment appealed from will therefore be affirmed in its entirety.