Rufo M. Hernández y Otros, querellantes, apelados y apelantes, *v.* Manuel A. del Valle y Otros, querellados, apelantes y apelados.

Número: 12757    Resuelto: 15 de noviembre de 1962

*Sifre, Ruiz-Suria & Sifre,* y *Baltasar Corrada del Río,* abogados
de los querellados, apelantes y apelados; *Antonio Figueroa
Rivera,* abogado de los querellantes, apelados y apelantes.
Sala integrada por el Juez Presidente Señor Negrón Fernández
y los Jueces Asociados Señores Blanco Lugo y Dávila.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del
Tribunal.

La sentencia en este caso fue dictada el 20 de octu-
bre de 1959 y notificada al día siguiente. Para revisarla,
ambas partes apelaron dentro de los cinco días de su archivo
en autos. Para esa fecha ya estaba en vigor la Ley Núm. 115
de 26 de junio de 1958.—4 L.P.R.A. sec. 37 (Supl. 1961) —
que enmendó la sección 4 de la Ley de la Judicatura de 1952,
estableciendo un nuevo procedimiento para acudir ante este
Tribunal. En *Andino* v. *Fajardo Sugar Co.,* 82 D.P.R. 85
(1961), resolvimos que ". . . en cuanto se refiere a las
sentencias dictadas por el Tribunal Superior en casos de
reclamación de salarios y desahucios, el recurso procedente
para traerlas ante la consideración del Tribunal Supremo es
el que se establece en la Ley Núm. 115 de 1958, *supra,* o sea
el de revisión discrecional, a menos que se plantee una cues-
tión constitucional sustancial, en cuyo caso puede acudirse
al recurso de apelación". Como en el presente caso no hay
planteada una cuestión de índole constitucional, lo que pro-
cedía era radicar un recurso de revisión; pero en el caso de
*Andino* expusimos a la pág. 95, que "[e]n relación con los
recursos interpuestos en casos de reclamación de salarios y

desahucio en los cuales no se siguió el procedimiento indicado en la presente opinión, y con miras a proteger adecuadamente los derechos de los litigantes, [cita] oportunamente proveeremos una vez consideradas las circunstancias de cada caso en particular". Y apuntamos en el escolio 12, que nos referíamos a los casos en que "se radicó el escrito de apelación, sin exponer fundamentos, dentro de los cinco días desde el archivo en autos de la notificación de la sentencia". Y esa es la situación en el caso de autos. Asumiremos, pues, jurisdicción para considerar los recursos interpuestos.

Despachada la cuestión jurisdiccional, pasamos ahora a los méritos del caso.

Un grupo de obreros reclama de los demandados la diferencia en jornal que establece el Decreto de Salario Mínimo Núm. 3 entre la fase agrícola e industrial de la industria azucarera. Los demandados operaban varias centrales azucareras pero además se dedicaban al cultivo de la caña de azúcar. La mayoría de los obreros reclamantes trabajaban en un taller donde se reparaban los tractores que se utilizaban para llevar la caña de la pieza al punto de concentración desde donde se transportaba al molino. Tres de los reclamantes, Pedro Charles, Rafael Peña y Rogelio Pérez, trabajaron en tiempo de zafra y hasta la terminación de la cosecha de 1954 en la operación de camiones cargados de caña desde la Colonia Sabana hasta la Central Juncos. Estos obreros luego de esa fecha pasaron a rendir servicios en el taller al igual que los otros reclamantes. A los reclamantes se les pagaba como obreros agrícolas. Alegan que tienen derecho a la compensación establecida para la fase industrial.

La disposición que invocan es aquélla del Decreto de Salario Mínimo Núm. 3 que establece la definición de la industria azucarera. Aparece en 29 R.&R.P.R. sec. 245n-32. Dispone así:

"La industria del azúcar a la cual se aplica este decreto se define como sigue: La producción de caña de azúcar en su

aspecto agrícola e industrial incluyendo, pero sin que se entienda esto como una limitación:

"(1) Fase agrícola: La preparación del terreno, la siembra, cultivo, recolección, *transporte de caña cuando sea hecho por agricultores*, y cualquier otra operación de naturaleza agrícola; y

"(2) Fase industrial: *La transportación de la caña cuando sea hecha por centrales azucareras*, el pesado, la preparación y molienda de la caña, y la elaboración, manipulación, empaque, pesado y almacenaje del azúcar y cualquier otra operación relacionada con el aspecto industrial de la manufactura de azúcar desde que la caña es pesada en la romana de la central hasta que el azúcar es removida de los almacenes de ésta; Disponiéndose, que la transportación del azúcar, cuando sea hecha por las centrales, se considerará como parte de la fase industrial." (Énfasis suplido.)

Sostienen los obreros reclamantes que al amparo de esta disposición tienen derecho a que se les compense su faena a base del salario industrial, pues sostienen que trasladar la caña de la pieza al punto de concentración constituye la transportación de que habla el decreto y que siendo la entidad que opera la central dueña de las plantaciones, es la central la que hace la transportación, y por lo tanto está obligada a pagar el salario provisto para la fase industrial a todos los obreros que rindan servicios en la actividad de llevar la caña desde la pieza hasta el punto de concentración. Esto incluye a los manipuladores de los tractores y a los que reparan los mismos.

El tribunal de instancia al fallar la controversia determinó que trasladar la caña cortada de la pieza al sitio de concentración, de donde es llevada al molino no constituye "transportación" según se usa dicho término en el decreto invocado por los reclamantes. Concluyó el tribunal de instancia que la actividad de trasladar la caña de la pieza al referido sitio de concentración, es parte de la recolección y que lo que constituye "transportación" de acuerdo con el decreto, es la actividad de llevar la caña del punto de concentración hasta el molino. El tribunal recurrido expresó

que "[t]radicionalmente, el proceso de llevar la caña desde la pieza hasta los desvíos del ferrocarril, había sido considerado como labor de arrimo de caña que forma parte de las labores de recolección de la industria azucarera". Según el tribunal de instancia "las operaciones de trasladar la caña desde la pieza hasta un punto de concentración, se considera como perteneciente a la fase agrícola conocida con el nombre de recolección. La fase de la transportación empieza en la plaza o centro de concentración y termina en el batey de la central de donde es llevada a los molinos para convertirla en azúcar y mieles." ■

La prueba que tuvo ante sí el tribunal sentenciador establece que en la industria azucarera se considera como parte de la recolección de la caña, el llevarla desde las piezas hasta el punto de concentración. La actividad de llevarla de este sitio de concentración hasta el batey de la central, es lo que constituye "transportación" de acuerdo con el decreto. Y esa última actividad si la lleva a cabo el colono se compensa con los salarios determinados para la fase agrícola, pero si es llevada a cabo por la central, se paga de acuerdo con los tipos fijados para la fase industrial Carece de importancia el hecho de que la entidad que se dedique a la labor agrícola sea la misma entidad que opere la central. *Maneja* v. *Waialua Agricultural Co.*, 349 U.S. 254 (1955) ; Cf. *Calaf* v. *González*, 127 F.2d 934, 937 (1er. cir. 1942). Como el trasladar la caña desde las piezas hasta el punto de concentración es parte del proceso de recolección, rigen los salarios que establece el decreto para la fase agrícola, no obstante el hecho que la actividad agrícola la lleve a cabo la misma entidad que opera el molino.

Aunque en realidad no son de estricta aplicación, los casos que consideran la aplicabilidad de la Ley Federal de Normas Razonables han determinado, interpretando la definición de "agricultura" que aparece en dicho estatuto, que el acto de llevar la caña de la pieza al punto de concentración,

de donde es transportada al molino, constituye una actividad de la fase agrícola, específicamente es parte de la recolección. *Vives* v. *Serrallés*, 145 F.2d 552 (1er. cir. 1944); Cf. *Calaf* v. *González*, supra. Evidentemente los autores de la ley tuvieron en cuenta las actividades que tradicionalmente se consideran como pertenecientes a la fase agrícola al redactar la definición. Los tribunales que han considerado las controversias surgidas en relación con la definición de agricultura que aparece en la ley federal obviamente también las han tenido en cuenta. ■

Los demandados apelaron de aquella parte de la sentencia que les condenaba a pagar a tres obreros la diferencia en jornal solicitada por el periodo que trabajaron como conductores de camiones transportando la caña desde la Colonia Sabana hasta la Central Juncos. Claramente a éstos había que compensarlos de acuerdo con los tipos establecidos para la fase industrial, pues se dedicaban a la actividad de llevar la caña desde el punto de concentración hasta el molino. Y esta actividad ya hemos dicho constituye "transportación" a los efectos del decreto que obliga a pagar jornales al tipo fijado para la fase industrial cuando la lleva a cabo la central.

*Procede, por tanto, la confirmación de la sentencia apelada en todas sus partes.*