**FLEMING, Wage and Hour Adm'r, v. FARMERS PEANUT CO.**

**No. 9899.**

Circuit Court of Appeals, Fifth Circuit.

May 25, 1942.

Irving J. Levy, Mortimer B. Wolf, and Rufus G. Poole, Asst. Sols., U. S. Dept. of Labor, and Milton C. Denbo and Norman S. Altman, Principal Attys., U. S. Dept. of Labor, all of Washington, D. C., and Geo. A. Downing, Regional Atty., U. S. Dept. of Labor, of Atlanta, Ga., for appellant.

C. Baxter Jones, of Macon, Ga., and Jeff A. Pope, of Cairo, Ga., for appellee.

John S. Lavin, of Orlando, Fla., and Counts Johnson and G. L. Reeves, both of Tampa, Fla., for Amicus Curiae.

Before SIBLEY, HOLMES, and Mc-CORD, Circuit Judges.

SIBLEY, Circuit Judge.

In this case the Wage and Hour Administrator seeks an injunction to compel Farmers Peanut Company, who is engaged in shelling peanuts in Cairo, Georgia, to observe the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., as to its employees. It is not denied that many of the employees, numbering about one hundred, are engaged in commerce, but it is contended that they are not under the Act because of the provision in Section 13(a) that the wage and hour provisions shall not apply: "(10) to any individual employed within the area of production (as defined by the Administrator), engaged in handling, packing, storing, ginning, compressing, pasteurizing, drying, *preparing in their raw or natural state*, or canning of agricultural or horticultural commodities for market, or in making cheese or butter or other dairy products." The Administrator's definition of area of production at the time of the trial limited it to operations on materials from farms in the general vicinity of the establishment if the number of employees engaged in those operations in that establishment did not exceed seven, or if the materials were not produced more than ten miles away and the establishment be in the open country or a rural community, excluding towns of 2,500 or more by the census of 1930. The establishment of Farmers Peanut Company had more than seven employees in the operations in question and was located in a town of slightly more than 2,500 inhabitants, and so was outside of the "area of production" thus defined. The district court held that in defining an area of production the Administrator was not authorized to limit the number of employees working together, or to exclude towns which were not great centers of population; it held this establish-

ment to be within the area of production of the peanuts, since they were all produced on farms in the vicinity, so that its employees are excepted from the Act, and refused an injunction. 37 F.Supp. 628. The Administrator appeals.

█ Since the trial the Administrator has amended his definition so as to raise the critical number of employees from seven to ten, and to eliminate the alternative part which refers to location in a rural community and not in a town, and to procuring the materials from farms within ten miles. The definition now of force is: "An individual shall be regarded as employed in the area of production within the meaning of Section 13(a) (10). * * * (a) if he performs those operations on materials all of which come from farms in the general vicinity of the establishment where he is employed and the number of employees engaged in those operations does not exceed ten." There are different definitons made with respect to dry edible beans, and to leaf tobacco. This change of definition does not make the case moot. The main issue of enforcing the Act remains. If this were a criminal prosecution, the old definition might be of importance. But the only relief here sought is injunction, which operates in the future. We are therefore now concerned with the new definition, as we would be with an amendment of the statute if one had been made. The question is shifted to the propriety of enforcing the new definition, which like the old excludes the employees here involved from the exception provided by Congress and puts them under the wage and hour provisions of the Act.

█ That part of the definition which speaks of materials all coming from the farms in the general vicinity of the establishment, though not very precise, is a legitimate defining of an area of production of agricultural commodities. The word area means a surface, a territory, a region; in this case the territory or region where farm and orchard products are raised. It may be of any extent, and hence the need of defining it. "Vicinity" is some advance because it means nearness, neighborhood, that distance in which producers are neighbors. This may be a greater distance in sparsely settled regions than in thickly populated ones. It excludes distance beyond the range of usual farm travel. But to define an area of produc-

tion by the number of workers in commerce who work in one establishment is not a true execution of the power given to define. In clear and explicit words Congress excepted from the Act individuals doing certain things about farm and orchard products in the area of their production, no matter how many the workers there might be. The power to define the area does not include the power to limit the exemption by denying it operation when more than seven or ten work together in one establishment. That part of the definition is void; the other part may stand. Manhattan G. E. Co. v. Commissioner, 297 U.S. 129, 56 S.Ct. 397, 80 L.Ed. 528.

We therefore have not a case where the Administrator has failed altogether to define. But if we ought to hold the entire definition void, we say that a failure to define would not enable the Administrator to prevail. It may be that the court cannot define for him, but it should withhold its aid in the effort to override the exception which needs his definition, until he meets the need lawfully. To do otherwise would be to flout the expressed will of Congress.

■ The court found as a fact that the peanuts here came from the farms in the general vicinity of Cairo, and we are not prepared to disagree. In this day of trucks and automobiles the neighborhood has been much enlarged. An indefinite definition may well be given a broad application.

■ We pass then to enquire whether the work of shelling and cleaning peanuts is "preparing them in their raw or natural state for market." Without doubt peanuts are an agricultural commodity, whether shelled or unshelled. The large Jumbo peanuts raised in Virginia and Carolina are (as the findings show), mostly marketed unshelled and are roasted in the shell for human consumption. The small Spanish peanuts raised in Georgia, Florida and Alabama are marketed shelled, to make candy, peanut butter and salted peanuts. Some are ground and pressed for oil. Preparing them for market may well include shelling, since they are not marketable in the shells or pods. By contrast, washing and sorting alone would be necessary to prepare the Jumbo peanuts for market. The statute makes no point about the preparation being done on the farm or by the farmer, but only that it occur in the area of production. It does not exclude the operation because it might be termed "processing", for pasteurizing, drying and canning of fruit and vegetables are processing, but are expressly mentioned. But the preparing must be in the "raw or natural state." These are not words of art and do not require nor obtain aid in their understanding from botanical or other experts. They do not need the doubtful light of legislative debates. Raw means in common speech not cooked, or refined; and natural state is one that has not been artificially changed. Shelled peanuts, like shelled beans or peas or corn, or threshed oats or wheat, are in a raw or natural state. The peanuts are not really nuts, but peas, the pod and the kernels it contains maturing in the ground instead of in the air. They are commonly called in Georgia (and accurately) "ground peas". The pods have been taken from the ground and from the plant that bore them and the peas are out of the covering pod that nourished them, but they are still the very crop of value that was raised. So corn is pulled from the stalk, the shuck stripped off and the cob removed, all without affecting the raw and natural state of the valuable grain; and wheat is cut and separated from the straw and chaff in the same manner. Peanut shells are of no value. Farmers do not start out to raise them. It is the peanut itself alone which is the valuable product. The shell, like the bean pod or the corn shuck, is only a protective covering, the removal of which does not affect the natural state of the contents. We have no difficulty in concluding that this removal, though done by machinery and off the producing farm and by one not a farmer, is, if done in the area of production, a work excepted from the Act by Section 13(a) (10). We need not specifically search out the aim of Congress, since the words used are plain, but we think the purpose was to treat these operations, when done in the vicinity of the producing farms, as agricultural labor is treated, excepting all alike from the wage and hour provisions of the Act.

The judgment is affirmed.