## HOLLY HILL FRUIT PRODUCTS, Inc., v. ADDISON et al.

### No. 10643.

Circuit Court of Appeals, Fifth Circuit.

June 24, 1943.

324

G. L. Reeves, of Tampa, Fla., Charles O. Andrews, Jr., of Orlando, Fla., R. B. Huffaker, of Bartow, Fla., and Counts Johnson, of Tampa, Fla., for appellant.

Ellis F. Davis, of Kissimmee, Fla., and George Palmer Garrett, of Orlando, Fla., for appellees.

Before HUTCHESON, HOLMES, and WALLER, Circuit Judges.

HOLMES, Circuit Judge.

Appellant is a cooperative corporation engaged in the packing and canning of citrus fruit at Davenport, Florida. This is a suit by its employees for wages, overtime, and statutory penalties alleged to be due them by reason of the failure of their employer to comply with the minimum-wage and maximum-hour requirements (Sections 6 and 7) of the Fair Labor Standards Act.[1] A final judgment was entered in favor of some of the employees, and the employer has appealed.

It is admitted that the wage-and-hour requirements of the Act were not observed, but appellant contends that they were not applicable to its employees because of the provisions of Section 13(a) (10) of said Act, 29 U.S.C.A. § 213(a) (10). This section provides that Sections 6 and 7 of the Act shall not apply with respect to any individual employed within the area of production (as defined by the Administrator) engaged in handling, packing, storing, preparing in their raw or natural state, or canning agricultural or horticultural commodities for market. It is plain that these employees were engaged in handling, packing, preparing, and canning agricultural or horticultural commodities for market; and the decisive question is whether they performed these activities within the area of production as defined by the Administrator.

Appellant's operations are seasonal, conforming with the harvesting of citrus fruit, and during the two seasons involved in the period covered by this suit it engaged in business from November 14, 1938, to May 26, 1939; and from November 16, 1939, to March 30, 1940. The Fair Labor Standards Act became effective on October 20, 1938, and as of that date the Administrator promulgated Section 536.2 of his Regulations, which provided that an employee was within the area of production under Section 13(a) (10) of the Act if the agricultural or horticultural commodities were obtained by the establishment where he was employed from farms in the immediate locality and the number of employees in such establishment did not exceed seven. The regulation was amended on April 30, 1939, by the addition of a paragraph providing that, with respect to the preparation or canning of perishable or seasonable fresh fruits, an employee was within the area of production if the employer's establishment was located in a rural community and obtained all of its products from farms in the immediate locality. It was further provided that the term "rural community" should not include any town of 2,500 or greater population, and the term "immediate locality" should not include any distance of more than 10 miles.

Effective as of June 17, 1939, the regulation again was amended to provide that a worker was employed within the area of production within Section 13(a) (10) if he performed his packing or canning operations on commodities that came from farms within the general vicinity of the employer's establishment, and the number of employees engaged therein did not exceed seven.

Our first problem is to determine whether these appellees were employed within the area of production from November 14, 1938, to April 19, 1939, as defined by the

[1] 29 U.S.C.A. § 201 et seq., 52 Stat. 1060 et seq.

regulation effective during that period. In the case of Fleming v. Farmers Peanut Co., 5 Cir., 128 F.2d 404, this court held that the limitation in the regulation as to the number of employees working together in the establishment had no relation to area of production and was void. Conceding without deciding that the remaining portion of the regulation is valid, the question is whether the commodities used by the establishment came from farms in the immediate locality. The evidence shows that 97.24 per cent of the commodities came from farms located within 10 miles of the establishment, and 96/100 of one per cent could not be traced; the balance came from farms less than 25 miles distant. The overwhelming percentage of the fruit obtained from farms within 10 miles was certainly within the immediate locality, and it would be most unreasonable to say that the negligible quantity obtained from a slightly greater distance should affect the statutory concept of area of production.

The regulation in force during appellant's operations from April 30, 1939, to May 26, 1939, provided that employees engaged in packing or canning perishable fruits were within the area of production if they worked in an establishment that was located in a rural community and that obtained all of its products from farms in its immediate locality. The regulation defined "rural community" to exclude any city or town of 2,500 or greater population, and "immediate locality" to exclude any distance of more than 10 miles. Appellant's establishment was located in Davenport, Florida, a town of 650 people, and during this period more than 97 per cent of the commodities processed came from farms located within 10 miles of the plant, as we have heretofore indicated. The purchase of so great a portion within a 10-mile radius of the plant, and the acquisition of the negligible balance from farms within 25 miles, were sufficient to prove that the products were obtained within the immediate locality. The language of the regulation should be construed to mean that *substantially all* of the commodities must be obtained within 10 miles of the establishment if the 10-mile limitation is to be held valid. It would be wholly arbitrary and unreasonable to say that employees in one plant are within the area of production if 10,000 bushels of fruit canned are purchased within 10 miles, and the employees in another plant are outside the area of production if only 100 of the 10,000 bushels canned were purchased 11 miles away and the balance was purchased within 10 miles.

During appellant's operations from November 16, 1939, to March 30, 1940, the regulation in force provided that one was employed in the area of production within Section 13(a) (10) if engaged in handling or canning agricultural or horticultural commodities that came from farms in the general vicinity of the establishment and the number of employees so engaged did not exceed seven. Again, on the authority of Fleming v. Farmers Peanut Co., supra, we disregard as void the limitation with respect to the number of employees, and consider only whether the fruits processed came from within the general vicinity of the establishment. During this period, 91.39 per cent of the fruit processed was purchased from farms within 10 miles of the plant, and an additional 4 per cent came from farms within 25 miles; none was known to have come from any greater distance. In ordinary usage, the words *general vicinity* indicate a larger area than is meant by *immediate locality,* and a distance of 25 miles in this day of highly developed travel facilities is not beyond the range of usual farm travel.[2]

The Administrator must define fairly and truly the area of production; but he cannot create such area, or arbitrarily limit it within false and artificial boundaries. On the other hand, this court should not attempt either to legislate or to define the area of production, but only to declare the law applicable to the facts before it, aided by the Administrator's definition, and *striking down invalid portions thereof only* to the extent that may be necessary in order correctly to dispose of the case. Considering the facts of this case with reference to the location of appellant's plant, it seems to us fairly certain that all of the citrus fruit processed therein came from the area of production as defined by the Administrator.

Finally, we conclude that these appellees were employed *within the area of* production during the entire period involved here, and that the minimum-wage and maximum-hour provisions of the Act did not apply to them. This result precludes the necessity of discussing the alternative con-

[2] Cf. Fleming v. Farmers Peanut Co., 5 Cir., 128 F.2d 404.

tentions made by appellant, one of which is that during both periods in controversy the regulation was wholly arbitrary and void except as to those parts that required the material to come from the immediate locality or general vicinity of the establishment. If this contention were sustained, the result would be the same and the exemption would be allowed, because 36.3 per cent of the 48,000,000 boxes of citrus fruit produced annually in Florida was produced in Polk County where appellant's plant was located, being approximately three times as much as was produced in any other county in Florida. The next largest production was in Orange County, approximately 25 miles north of appellant's plant, located at or near the exact geographical center of the largest citrus growing area of any state in the United States. Since it is not necessary to decide the issue presented by this contention, in order correctly to dispose of the case, we refrain from doing so.

The judgment appealed from is reversed, and the cause remanded to the district court for further proceedings not inconsistent with this opinion.

WALLER, Circuit Judge (specially concurring).

It is impossible to study the Fair Labor Standards Act without reaching the definite conclusion that Congress intended to exempt the farmers, in the growing and marketing of their crops, from the provisions and also the effect of that Act. The farmer has been for many years a favorite of Congress, which body recognized the impecunious position of the average farmer throughout the nation, and that the farmer was unable to pay high wages for labor either in the production or in the marketing of his crops. It is a known economic fact that one of the chief problems of a farmer is how to market that which he grows, and Congress was aware of that problem. It, therefore, refrained, or intended to refrain, from adding any further burdens or expenses to the farmer in the marketing of his crop, particularly fresh fruits and vegetables of a seasonal nature. In this endeavor Congress provided that those engaged in canning of seasonal fruits and vegetables within the area where such fruits and vegetables were produced would not come within the coverage of the Act during certain seasonal operations. It is reasonable to assume that if the canner who purchases the farmer's fruits and vegetables is required to work his employees shorter hours and pay them higher wages, the added costs will be reflected in a reduction of the price which such canner will pay to the farmer for his products. It is believed that this is one of the things Congress sought to avoid by the exemption in Sec. 13 (a) (10) of the Act, 29 U.S.C.A. § 213(a) (10).

There are many who believe that the term "area of production" had reference to large geographical areas such as "the citrus belt", "the cotton belt", "the beet sugar belt", "the sugar cane belt", "the corn belt", and the like, and there is much logic in that thought when considered in the light of the purpose of Congress to undertake to protect the farmer against influences adverse to the ready marketing of his products at a fair price.

However, the Administrator has adopted no such broad concept of the term "area of production" and, in fact, has generally disregarded what is, in fact, the area of production, but has converted the actual and factual area of production into an arbitrary creation of his own. The real question is whether the actual area of production is to be disregarded and the definition of the Administrator is to control rather than the intent of Congress not to handicap the farmer in the marketing of his produce. In short, whether the term "area of production" is to control, or the bracketed phrase "(as defined by the Administrator)" is to control. To put it differently, can the Administrator be said to have defined the area of production of certain commodities when in truth and in fact he has not defined such area of production? Congress can see a rabbit run across a State line and declare it was a lion, and a lion it is, but can the Administrator do that? My thought is that the Administrator must define the area of production in fact and without regard to the number of employees, without regard to the location of a city, and without regard to any factor other than the area within which such fruits and vegetables are customarily, in the usual course of business, brought by the farmer to be marketed or processed.

There is no justification in the Act for restricting the canning or processing plant to any number of employees. There is no justification in the Act, nor in reason, for exempting only canning plants located in cities of not more than twenty-five hundred. There is no justification in the Act, nor in reason, for limiting the area of production

to a circle having radii of ten miles if in truth and in fact the farmer living beyond the circumference of such a circle customarily brings his produce to market at a point more remotely removed than ten miles or to a plant located in a city of a population in excess of twenty-five hundred. Congress did not intend to penalize the farmer who lived up at the head of the creek and out of the twenty-mile circle by requiring him to haul his produce to a cannery at a point different from that at which he customarily marketed his produce and made his purchases. It did not intend to require a farmer to haul his produce to a cannery in a town having not more than twenty-five hundred people. Nor did it intend to penalize the farmer living near a town of more than twenty-five hundred by saying: "You cannot haul your produce to the largest town near which you live unless you want to sell your produce for less money to a canner who has to pay higher wages than the country canner does." Nor did it intend to make it cost the canner more to can the backwoodsman's fruit than it cost it to can the fruit of the suburbanite.

In conclusion, it is my view that the *actual* area of production is the area that the Administrator must define. If he wishes to be technical, some of the factors that he might reasonably take into consideration are: (a) availability of other canning plants; (b) freedom of access by good roads; (c) the capacity of the canning plant to handle the produce; (d) the efficiency of the plant; (e) the quantity of produce raised in the area in relation to plant capacity; (g) and in the case of a cooperative cannery (as in the present case) the location of the members of the cooperative. There are many factors of far more relevancy or pertinency than the number of employees or the population of the town in which located, or the radius of an arbitrary circle.

Until and unless a reasonable definition has been made of the actual "area of production" it seems to me that the Courts would be justified in adopting as the "area of production" that area within which farmers customarily, in the usual course of business, bring, or cause to be brought, their produce to be canned or marketed.

"Area of production" readily suggests something akin to the "trade area" of a town, because it is the habit of the farmers to trade in the same town where they market their produce.

I concur in the opinion of the Court but think that the opinion might well have gone further in its discussion of the term "area of production".