**HOLT et al. v. BARNESVILLE FARMERS ELEVATOR CO.**

No. 12860.

Circuit Court of Appeals, Eighth Circuit.

Oct. 18, 1944.

Rehearing Denied Nov. 29, 1944.

Leonard Eriksson, of Fergus Falls, Minn. (Owen Thompson, of Fergus Falls, Minn., on the brief), for appellants.

W. E. Rumble, of St. Paul, Minn. (N. B. Hanson, of Barnesville, Minn., Edgar G. Vaughan and Doherty, Rumble, Butler, Sullivan & Mitchell, all of St. Paul, Minn., on the brief), for appellee.

Before GARDNER, THOMAS, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

This is a suit brought by employees of the Barnesville Farmers Elevator Company, a corporation, for overtime wage payments claimed under the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. The district court held that, because of the exemption contained in §. 13(a) (10) of the Act, 29 U.S.C.A. § 213 (a) (10), the employees were not within the protection of the Act.

The appellee elevator company is principally engaged in storing, buying, and selling grain in Barnesville, Minnesota, a town with approximately 1,300 population. It also sells coal, wood, twine, seed, farm machinery, and machinery parts locally at retail. Its retail operations constitute only a small part of its business. Grain which it purchases is shipped by appellee in railroad cars for sale on the Minneapolis or Duluth grain exchanges. Substantial portions of the grain move out of the State of Minnesota in the identical cars. in which it is loaded at Barnesville. All of the grain stored, purchased, or sold by the appellee company is produced upon farms within 25 miles of appellee's elevator, which is located in one of the heavy grain-producing sections of Minnesota. The appellee never employed more than seven persons in handling grain which it received either for storage or purchase and sale.

The appellant employees performed the following work in the course of their employment. When grain was received at the elevator they weighed, tested, and graded it, dumped it into pits, and gave to the person depositing or selling the grain a receipt or scale ticket showing the grain's gross weight, its net weight,

and the amount of dockage and tare. Thereafter, by mechanical equipment they elevated the grain from the pits to elevator bins. From these bins the grain was put through mechanical equipment for cleaning and was then returned to other bins in accordance with its grade. The appellants also transferred the grain from one bin to another within the elevator, operated the equipment which loaded trucks for transfer of the grain to appellee's portable granaries, loaded the grain in railway cars from the elevator and granaries, coopered the doors of the cars, sealed them, and made tests for leakage. A small proportion of the appellants' time was given to their employer's local retail business. They occasionally weighed and sacked coal, seeds, feed, and twine, sold in this business, acted as salesmen in respect to the merchandise sold, assembled the farm machinery, and treated the seed.

Section 13(a) (10), 29 U.S.C.A. § 213 (a) (10) so far as material here, provides:

"(a) The provisions of sections 6 and 7 shall not apply with respect * * *

"to any individual employed within the area of production (as defined by the Administrator), engaged in handling, * * storing, * * * preparing in their raw or natural state * * * agricultural or horticultural commodities for market * * *."

■ We agree with the district court in its conclusion that the work done by appellants in appellee's elevator was that described in the section of the Act just quoted. We think this conclusion is in accord with the administrator's interpretations of the Act. In Interpretative Bulletin No. 14, 2 C.C.H., Labor Law Service, paragraph 32,114, the administrative interpretations of the words "Handling," "Storing," and "Preparing in Their Raw or Natural State" are given in paragraphs 26, 28, and 33, from which we quote the following:

"Handling

"26. The operations included in this term appear to be those physical operations customarily performed in obtaining agricultural or horticultural commodities from producers' farms, transporting them to and receiving them at the establishment, weighing them or otherwise determining on what basis the producer is to be paid, placing them in the establishment where further operations are to be performed, and delivering the commodities to warehouses. Specifically, these operations include loading the commodities on trucks, wagons, etc., in producers' fields or at concentration points, transporting them to the establishment receiving and unloading them at the establishment, counting or weighing the commodities, assembling, binning, piling, or stacking them in the establishment, moving them from one place to another in the establishment, moving the bags, boxes, cases, barrels, bales, coops, and other loaded containers to wagons, trucks, railroad cars or other conveyances, and transporting the commodities away from the establishment. * * *"

"Storing

"28. Operations which appear to be included in this term are those involved in (1) placing agricultural or horticultural commodities in storage rooms or other places where the commodities are to be held prior to further preparation, sale or shipment; (2) taking care of the commodities while they are being so held; and (3) removing them from the storage rooms and transferring them to wagons, trucks, railroad cars, or other conveyances. * * *"

"Preparing in Their Raw or Natural State

"33. The operations included in this term may be any of a large number that are performed in connection with many different kinds of agricultural or horticultural commodities. They do not include operations which change the form of the commodity or which are performed after the commodity leaves its raw or natural state.

*     *     *     *     *

"3. Grain, seeds or forage crops— Cleaning, hand-picking, sorting, grading, fumigating and mixing are included. * * *"

The arguments advanced by the appellants against the conclusion reached are answered both by the plain terms of the Fair Labor Standards Act and by the administrative interpretations quoted above.

■ There remains for consideration the question of whether appellants were "employed within the area of production (as defined by the Administrator)." During the period of time involved in this suit three definitions of "area of production" were made by the administrator, varying in terms, and effective during different

portions of the period involved. It is unnecessary, however, to set them out in detail or to discuss the difference between them for the reason that each of them contains a limitation upon the number of persons employed in the exempted operations. In Addison et al. v. Holly Hill Fruit Products, Inc., 322 U.S. 607, 64 S.Ct. 1215, 1222, 88 L.Ed. ——, decided June 5, 1944, the Supreme Court held void the administrator's limitation as to the number of employees in his definition of "area of production", and also that the presence of the limitation rendered the definition void in its entirety. The present case was decided by the district court on the 13th day of September, 1943, 52 F. Supp. 468, and at that time its conclusion that the void limitation upon the number of employees within a given area defined by the administrator might be ignored and the remainder of the definition applied was supported by the authorities. See Holly Hill Fruit Products, Inc. v. Addison et al., 5 Cir., 136 F.2d 323, and Fleming v. Farmers Peanut Co., 5 Cir., 128 F.2d 404. However, when the Holly Hill Fruit Products, Inc., case reached the Supreme Court, it held otherwise. 322 U.S. 607, 64 S.Ct. 1215, 1222. Because Congress had imposed upon the administrator and not the courts the duty of defining area of production, it was held that the Holly Hill Fruit Products, Inc., case "should be remanded to the district court with instructions to hold it until the Administrator, by making a valid determination of the area with all deliberate speed, acts within the authority given him by Congress."

In the light of this decision of the Supreme Court, it seems idle for us to discuss the question, much argued by appellants, whether, under the evidence in this case, the appellants were employed within the "area of production" as defined by the administrator. It is certainly not worth while to inquire whether in the circumstances of this case the employment of the appellants was within the terms of a void definition. And since, under the decision of the Supreme Court, the district court's action in applying the void definition of "area of production" was clearly erroneous, it follows that the judgment in this case must be reversed. Realizing this situation the appellee has moved the court to dismiss the appeal and remand the case to the district court. With-

out in any manner intimating a decision upon the power of this court to adopt the course suggested in the motion, we consider the better procedure to be that indicated above.

The motion to dismiss the appeal is denied, the judgment of the district court is reversed, and this cause is remanded for further proceedings in accordance with Addison v. Holly Hill Fruit Products Co., Inc., and in conformity with this opinion.