**DURKIN, Secretary of Labor, v. BUDD et al.**

**DURKIN, Secretary of Labor, v. KING EDWARD TOBACCO CO. OF FLORIDA.**

Nos. 305, 340.

United States District Court
N. D. Florida, Tallahassee Division.

Sept. 29, 1953.

Beverly Worrell, Regional Atty., U. S. Department of Labor, Birmingham, Ala., for plaintiff.

Caldwell, Foster, Parker & Wigginton, Tallahassee, Fla., for Budd Co.

Edward J. McCarthy, Jacksonville, Fla., and Richard J. Gardner, Quincy, Fla., for King Edward Co.

DE VANE, Chief Judge.

U. S. Type 62 Sumatra tobacco is a leaf tobacco grown and used extensively for cigar wrappers and grown exclusively in two areas in Florida and one small area in Georgia. The principal area where this tobacco is grown is in Gadsden and Leon counties, Florida and in Decatur and Grady counties, Georgia, contiguous to the Florida counties named above. All this type of tobacco grown in these counties is grown within an airline radius of thirty miles of the town of Quincy in Gadsden county, Florida and is processed and packed in packing houses located chiefly in and around Quincy. In the Quincy area of production there are 300 farmers growing this type of tobacco of which 80% grow and harvest less than 25 acres per year. A small amount of this type of tobacco is also grown in Madison county, Florida.

### History of Litigation

Plaintiff originally brought suit against Joseph T. Budd, Jr. and Florence W. Budd, co-partners, doing business as J. T. Budd, Jr. and Company, to enjoin this company from violation of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. This suit was instituted on February 10, 1951. The facts in the case, as disclosed by the pleadings and supporting evidence filed in the case, show that the Budd Company grows no Type 62 tobacco, but operates a packing house where it processes the tobacco grown by many small farmers.

At a pre-trial conference held in February, 1952, after the case was at issue, it developed that of the 11 remaining packing houses in the Quincy area processing Type 62 tobacco for shipment and sale, and who had not complied with the Fair Labor Standards Act, 6 processed, in addition to tobacco grown by themselves, tobacco grown by others, and the remaining 5 processed tobacco grown by themselves alone.

It was obvious to the court, at the conclusion of the pre-trial conference, that the

Budd Company operation was in violation of the Fair Labor Standards Act. A decision to that effect in that case would have adversely affected the 6 other operators not in compliance with the Act, who process and pack tobacco grown by small farmers. It also appeared to the court at that time that any decision in the Budd Case would not immediately affect the packing house operators who process their own tobacco exclusively. The overall result would have been disastrous to the small growers of Type 62 tobacco. Therefore, the court insisted that before decision in the Budd Case, the Administrator bring suit against an operator processing tobacco grown exclusively by it, so that the court could determine whether the Act was applicable to their packing house operations as well. The Administrator, accordingly, brought suit against the King Edward Tobacco Company of Florida. This suit was filed on March 23, 1952. The May Tobacco Company intervened and is a party defendant in this suit.

The nature of the alleged violations in the King Edward Tobacco Company Case are the same as those alleged in the Budd Case. When this case became at issue on the pleadings and supporting evidence introduced by the parties, defendant, King Edward Tobacco Company, filed a motion for summary judgment contending that the essential facts were not in dispute and that on the undisputed facts defendant is exempt from the Fair Labor Standards Act, under Clauses (6) and (10) of Section 213(a) of the Act. Because of collateral factual issues raised by plaintiff in this case, which the plaintiff was unwilling to waive at that time, the court was compelled to and did, deny defendant's motion for summary judgment.

At a pre-trial conference held in this case and in the Budd Case, on a later date, the court announced to the respective parties that in its opinion the essential facts in each of these cases are not in dispute and that upon each party plaintiff and defendant waiving the unessential questions raised in their pleadings and supporting evidence by filing motions for summary judgment the court would pass upon these motions and determine whether the operations of these defendants at their packing houses are subject to the Fair Labor Standards Act.

Due, however, to the effect such a decision would have upon these defendants, should the decision go adversely to them, by leaving all their competitors free from compliance with the Act until their cases were adjudicated, the court further suggested, and the Administrator acquiesced in the proposal of the court, that suits be brought against every packing house operator in the Quincy area not in compliance with the Act and that these cases be brought to issue in the same way as the cases then before the court. This has been done. There are 15 packing houses operating in this area. Similar suits are now pending against the operators of 12 of these packing houses, which are at issue. The essential facts in each case are not in dispute and the sole question before the court is whether packing house employees are exempt under Clauses (6) and (10) of Section 213(a) of the Act.

The court is now in position to render judgment in all these cases that will be applicable to all of them alike at the same time and no injustice will be done anyone, however the cases may go. The remaining 3 packing houses have complied with the provisions of the Act.

### Method of Growing, Harvesting and Marketing Type 62 Shade Leaf Tobacco

Type 62 shade leaf tobacco requires special and painstaking cultivation, harvesting, curing and preparation for market. It grows in fields inclosed in a cheesecloth shade, which completely covers and incloses the tobacco field. The cheesecloth is supported by wires strung on posts placed at regular intervals through the fields. It is highly fertilized and intensively cultivated during the growing period. When each leaf reaches a certain stage of maturity it is promptly harvested. This harvesting process is known as "priming". The lower leaves are picked first, perhaps not more than two or three from each stalk. This picking is repeated as the tobacco matures

on up the stalk until all the marketable leaves have been removed. At each priming the tobacco is immediately taken to a tobacco barn located on the farm where it is strung on sticks and dried by means of heat. When the tobacco is almost completely dried the drying process is interrupted and it is permitted to absorb moisture and again dried. This drying process is repeated until the tobacco has reached a stage in the process of curing when it is ready for the packing house.

It is then taken from the barns in the field, placed in appropriate containers and carried to the packing house where it is placed in piles known as "bulks" for curing. Each bulk consists of more than 3000 lbs. of tobacco. The packing houses are equipped with machinery for the appropriate humidification and curing of the tobacco. During the curing period the temperature within each bulk is closely watched from day to day and at regular intervals, when the appropriate time has arrived, the bulk is broken up, the tobacco leaves shaken out and those on the outside placed on the inside of the new bulk and those on the inside placed on the outside for further curing. This process is continued until the tobacco is ready for market when it is bailed for shipment.

In the Quincy area, for the year 1950, approximately 2554 acres were planted to Type 62 shade leaf tobacco. Of this total acreage 1459 acres were grown by companies operating packing houses that handled no tobacco save that produced by them. Small producers owning no packing houses but depending on others for the preparation of their tobacco for market grew 784 acres and the packing houses that processed this tobacco also grew and processed for their own account 311 acres.

### The Budd Case

■ The Budd Company grows no tobacco for its own account, but processes and prepares for market in its packing house tobacco grown by others. For the year 1950 this company processed the tobacco grown by 52 small farmers on 263 acres. The Budd Company entered into a contract with each of these farmers un-der which each farmer theoretically took over the packing house with all its equipment and the employees (approximately 108) of the Budd Company for the processing of his own tobacco and sold the tobacco, when processed, to the Budd Company. A system of bookkeeping was set up by which each farmer paid to the Budd Company the actual cost of the processing of the tobacco grown by him, and the Budd Company paid the employees. During the year 1950, 333,-889 lbs. of tobacco of these 52 farmers was processed in the Budd Company's packing house. It was all purchased by the Budd Company. The Budd Company sold 231,209 lbs. of this tobacco to the Budd Cigar Company, a corporation of Quincy, Florida. The remainder of the tobacco was sold to other persons, firms or corporations, much of which went in to interstate commerce.

Little need be said as to the plan adopted by the Budd Company to circumvent the Fair Labor Standards Act. The arrangement was conceived and put into effect solely for this purpose. This law may not be circumvented in this manner and the plan adopted did not accomplish the result desired. The Budd Company operations are clearly subject to the provisions of the Fair Labor Standards Act, with reference to the compensation of all employees working on the tobacco or in connection therewith in the Budd packing house. Farmers Reservoir & Irrigation Co. v. McComb, 337 U.S. 755, 69 S.Ct. 1274, 93 L.Ed. 1672; McComb v. Super-A Fertilizer Works, Inc., 1 Cir., 165 F.2d 824.

### The King Edward Tobacco Company Case

■ In the King Edward Tobacco Company case the facts are entirely different from those in the Budd case. During the year 1950 the King Edward Tobacco Company cultivated 206 acres of Type 62 shade leaf tobacco. The process of growing, harvesting and drying this tobacco in the barns on the farms where the tobacco was grown and in bulking, curing and preparing the tobacco for market in the packing house was the same as that generally outlined heretofore.

When the tobacco reached the stage in the process of curing, when it was ready for the packing house, the King Edward Tobacco Company took it to one of its packing houses where no other tobacco was processed and made ready for market.

The King Edward Tobacco Company operates two other packing houses where tobacco grown by others is processed and made ready for market and defendant concedes that these packing house operations are subject to the Act, but as it uses the packing house involved in this suit to process tobacco grown only by it, it claims exemption for this operation from the provisions of the Act. The tobacco processed by the defendant in this packing house is sold chiefly to an affiliate of the defendant.

The packing house in question is located within the corporate limits of Quincy, Florida and is not located on any of the farms operated by defendant. In this case the issue is whether the packing house employees are entitled to the benefits of the Fair Labor Standards Act or whether defendant's operations are exempt therefrom under Clauses (6) and (10) of Section 213(a) of the Act.

Plaintiff concedes that all labor employed in the growing, harvesting and handling of the tobacco up to the time it reaches the platform of the packing house is exempt, but as soon as this tobacco is delivered to the packing house, all employees engaged in the handling of it thereafter or who work in any other capacity in connection with its handling, are subject to the Act. Defendant's position is that the farming operation in connection with the handling of this tobacco does not cease until the tobacco is prepared for market and made ready for shipment, which would exclude every employee in the packing house working thereon or in connection therewith.

This question has been before the court in numerous cases and there is some conflict among the decisions as to where the farming exemptions end and the Wages and Hours provisions of the Fair Labor Standards Act applies. Comp. Fleming v. Farmers Peanut Co., 5 Cir., 128 F.2d 404 and Puerto Rico Tobacco Marketing Co-operative Ass'n v. McComb, 1 Cir., 181 F.2d 697. On the same day the Court of Appeals, 5th Circuit, decided Fleming v. Farmers Peanut Company, supra, it also decided Fleming v. Jacksonville Paper Company, 128 F.2d 395. While the Court of Appeals reversed the Jacksonville Paper Company case the reversal was on very narrow grounds, as disclosed by the opinion in that case. The Administrator carried the Jacksonville Paper Company case to the United States Supreme Court—see—Walling v. Jacksonville Paper Company, 317 U.S. 564, 63 S.Ct. 332, 335, 87 L.Ed. 460. The Supreme Court affirmed the judgment of the Court of Appeals, 5th Circuit, reversing the District Court in that case, but in so doing held the Court of Appeals adopted "too narrow a construction of the Act" in its opinion in that case.

In all cases it is not easy to draw the line, but based upon the reasoning in the later cases it is not difficult to draw the line in this case. This court finds and holds that upon the record in this case the farming exemption ends when the tobacco reaches the receiving platform of the packing house for processing and packing purposes for use or sale in the market. The court considers it unnecessary to labor this point as this question has been sufficiently considered and expounded in the cases relied upon by this court to sustain its findings and holdings herein. Walling v. Jacksonville Paper Company, 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460; Farmers Reservoir & Irrigation Co. v. McComb, 337 U.S. 755, 69 S.Ct. 1274, 93 L.Ed. 1672; Waialua Agr. Co. v. Maneja, D.C., 97 F.Supp. 198; Calaf v. Gonzalez, 1 Cir., 127 F.2d 934; Vives v. Serralles, 1 Cir., 145 F.2d 552 and Walling v. Connecticut Co., 2 Cir., 154 F.2d 552. Having found and held that the farming exemption ends when the tobacco reaches the receiving platforms of the packing house, it is unnecessary to consider the relative scope and effect of Clauses (6) and (10) of Section 213(a) of the Act in this case.

## May Tobacco Company Case

The May Tobacco Company case is in every respect similar to that of the King

Edward Tobacco Company case. The May Tobacco Company grew 90 acres of Type 62 shade leaf tobacco in 1950 and processed in its packing house tobacco grown exclusively by it. For the reasons stated above with reference to the application of the Fair Labor Standards Act to the King Edward Tobacco Company the court finds and holds that the packing house operations of the May Tobacco Company are also subject to the provisions of the Act.

An appropriate judgment will be entered in the Budd Case, the King Edward Case and the May Case in conformity with this Memorandum Decision.

What the court has held in the Budd Case, the King Edward Tobacco Company Case and the May Case is equally applicable to each of the other cases pending before the court and upon plaintiff filing a motion for summary judgment in each case a short memorandum decision, referring to the decision in these cases, will be filed in those cases and a final judgment entered in each case accordingly.