

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

November 17, 1997

The Honorable Michael P. Fleming
Harris County Attorney
1001 Preston, Suite 634
Houston, Texas 77002-1891

Opinion No. DM-456

Re: Whether a county may amend a tax abatement agreement entered into pursuant to Tax Code chapter 312 by deleting land from an existing reinvestment zone and related questions (RQ-938)

Dear Mr. Fleming:

You ask about the authority of a county to amend a tax abatement agreement entered into by the county pursuant to Tax Code chapter 312. First, you ask whether a county is authorized to amend a tax abatement agreement by deleting land from an existing reinvestment zone. You also ask whether property within a county reinvestment zone must be contiguous and whether a county may designate only a portion of a building, such as a floor, as a reinvestment zone. Finally, you ask about the criteria for tax abatement agreements. We conclude that a county is not authorized to amend a tax abatement agreement by deleting land from an existing reinvestment zone. We also conclude that a county reinvestment zone must be contiguous and may not consist of only a portion of a building. Lastly, we conclude that the legislature intended to leave the substance of criteria for tax abatement agreements to the discretion of each county commissioners court, subject to very general constraints and certain specific limitations imposed by chapter 312.

In 1981, the voters ratified article VIII, section 1-g of the Texas Constitution, subsection (a) of which permits the legislature to enact general law authorizing cities and other taxing units "to grant exemptions or other relief from ad valorem taxes on property located in a reinvestment zone for the purpose of encouraging development or redevelopment and improvement of the property." The legislature enacted the Property Redevelopment and Tax Abatement Act, now codified as Tax Code chapter 312, in anticipation of this constitutional amendment.

Subchapter C of chapter 312 authorizes a commissioners court of a county to enter into a tax abatement agreement with the owner of taxable real property located in a reinvestment zone only if the county commissioners court has designated the reinvestment zone according to certain statutory procedures. *See* Tax Code § 312.402(a). In order to be eligible to designate a reinvestment zone, a county must first establish guidelines and criteria governing tax abatement agreements. *See id.* § 312.401(a); *see also id.* § 312.002(a). A commissioners court may not designate an area as a reinvestment zone until it has held a public hearing on the designation and finds that the designation "would contribute to the retention or expansion of primary employment or would attract major investment in the zone that would be a benefit to the property to be included in the zone and would

contribute to the economic development of the county." *Id.* § 312.401(b).[1]  The designation of a reinvestment zone expires after five years and may be renewed "for periods not to exceed five years." *Id.* § 312.401(c).  The expiration of the designation of a reinvestment zone does not affect existing tax abatement agreements. *Id.*  A reinvestment zone designated under Government Code chapter 2303, the Texas Enterprise Zone Act, constitutes a reinvestment zone for purposes of subchapter C, and a county is not required to adhere to the subchapter C statutory procedures in order to enter into tax abatement agreements with property owners within the zone. *Id.* § 312.4011.

Once a county has designated a reinvestment zone, the commissioners court of the county is authorized to execute tax abatement agreements with owners of taxable real property within the zone. *Id.* §§ 312.401, .402(a).  The execution, duration and other terms of a county tax abatement agreement are governed by sections 312.204, 312.205, and 312.211, which govern municipal tax abatement agreements. *Id.*  Similarly, a county tax abatement agreement "may be modified or terminated in the same manner and subject to the same limitations as provided by [s]ection 312.208," *id.* § 312.402(e), the provision governing the modification and termination of municipal tax abatement agreements.  A county tax abatement agreement may not exceed a period of ten years, *id.* § 312.204(a), and may not be modified to extend beyond that ten-year period, *id.* § 312.208(a).  Again, the expiration of the designation of the reinvestment zone does not affect existing agreements within the zone. *Id.* § 312.401(c).

Your brief suggests that a reinvestment zone and a tax abatement agreement are legally one and the same.  Based on our analysis of the statutory provisions discussed above, we view the relationship between a reinvestment zone and a tax abatement agreement differently.  Although property subject to a tax abatement agreement may be coextensive with a reinvestment zone,[2] a tax abatement agreement and a reinvestment zone are legally distinct.  Designation of a reinvestment zone is a prerequisite to commissioners court authority to enter into a tax abatement agreement.  A reinvestment zone is established by commissioners court order after the court has held public hearings and made the requisite findings.  In addition, a reinvestment zone may (but need not)[3] encompass holdings of many property owners and may be subject to more than one tax abatement agreement.[4]  Furthermore, a reinvestment zone's designation expires five years after the date of the

---

[1]Section 312.401 authorizes the commissioners court of a county to designate as a "reinvestment zone an area of the county that does not include area in the taxing jurisdiction of a municipality." Tax Code § 312.401(a).

[2]*See* Letter Opinion No. 89-31 (1989) (property of single owner may qualify as reinvestment zone under statutory predecessor to Tax Code ch. 312).

[3]*See supra* note 2.

[4]The language in section 312.401(c) providing that "[t]he expiration of the designation [of a reinvestment zone] does not affect existing agreements," and section 312.204(b), which requires agreements made with the owners of property in a reinvestment zone to contain certain identical terms, demonstrates that the legislature envisioned that a land within a reinvestment zone could be owned by more than one property owner and could be subject to multiple tax abatement agreements.

designation and may be renewed for periods not to exceed five years.[5] A tax abatement agreement, on the other hand, is a contractual agreement negotiated between the county and a specific property owner. A tax abatement agreement governs the taxation of specific property within a zone. A commissioners court is not required to hold hearings or make findings regarding a tax abatement agreement. Finally, a tax abatement agreement, which may not exceed a ten-year period, has a different life span than a reinvestment zone.[6]

With this overview of a county's authority to enter into a chapter 312 tax abatement agreement and the relationship between a reinvestment zone and a tax abatement agreement, we turn to your specific questions. First, you ask if a county is "authorized to amend a tax abatement agreement by deleting land from an existing reinvestment zone." For the following reasons, we conclude that a county is not authorized to do so.

First, we find no authority for a county to modify a reinvestment zone. A county has only those powers conferred by the Texas Constitution and statutes, either expressly or by necessary implication.[7] Subchapter C contains no provision expressly authorizing a county to modify a reinvestment zone once the zone has been designated and we do not believe such authority can be implied. The authority to modify a reinvestment zone is not necessary to the implementation of subchapter C. Furthermore, the Tax Increment Financing Act, which was also enacted by the legislature in 1981 in anticipation of article VIII, section 1-g of the Texas Constitution, contains a provision expressly authorizing a city to reduce or enlarge the boundaries of an existing reinvestment zone. *See* Tax Code § 311.007; *see also id.* § 311.017 (providing for early termination of reinvestment zone). In addition, the Texas Enterprise Zone Act, a similar economic-development statute now codified in chapter 2303 of the Government Code, permits a governing body that nominated an enterprise zone to amend the boundary of the enterprise zone. *See* Gov't Code § 2303.110. We believe that if the legislature had intended to authorize a commissioners court to modify a Property Redevelopment and Tax Abatement Act reinvestment zone it would have expressly provided such authority.

Second, Tax Code section 312.208, which governs a county's authority to modify a tax abatement agreement, does not authorize modification of an agreement by changing the reinvestment zone in which the taxable real property is located. We do not believe such authority can be implied. While section 312.208 does provide that a tax abatement agreement may be modified to include "provisions that could have been included in the original agreement or to delete provisions that were

---

[5]Tax Code § 312.401(c).

[6]*See id.* §§ 312.204(a) (tax abatement not to exceed 10-year period), .208(a) (effect of modification of tax abatement agreement may not extend agreement beyond 10-year period); *see also id.* § 312.401(c) (expiration of reinvestment zone designation does not affect existing tax abatement agreements).

[7]Tex. Const. art. V, § 18; *Canales v. Laughlin*, 214 S.W.2d 451, 453 (Tex. 1948); *Anderson v. Wood*, 152 S.W.2d 1084, 1085 (Tex. 1941); *Travis County v. Colunga*, 753 S.W.2d 716, 720 (Tex. App.–Austin 1988, writ denied).

not necessary to the original agreement," subchapter C does not specify the boundaries of the reinvestment zone as a term of a tax abatement agreement. *See* Tax Code §§ 312.204(a) (setting forth limitations on tax abatements), .205(a) (setting forth terms that must be included in tax abatement agreement). Moreover, for the reasons discussed above, we do not believe that the boundaries of a reinvestment zone may be included as a contractual term between the county and the property owner. Again, commissioners court authority to designate an economic development zone is unilateral and contingent only on the court's adherence to statutory requirements. *Id.* § 312.401(a), (b). Commissioners court authority to enter into a tax abatement agreement presupposes that the taxable property at issue is located in a previously designated reinvestment zone. *Id.* § 312.402(a). We do not believe that a commissioners court order enacted after a public hearing and the making of certain findings can be modified by agreement between the county and a private party.

To summarize, chapter 312, subchapter C does not authorize a county to modify a reinvestment zone after it has been designated. The authority to modify a tax abatement agreement does not include the authority to modify the reinvestment zone in which the property subject to the agreement is located. Because we conclude that a county is not authorized to amend a tax abatement agreement by deleting land from an existing reinvestment zone, we do not address your related questions.[8]

Next you pose two questions about the physical characteristics of a reinvestment zone. You ask first whether property within a county reinvestment zone must be contiguous and second whether a county is authorized to designate a portion of a building, such as a floor, as a reinvestment zone. Because these questions are related, we address them together.

While subchapter C does not establish any express requirements for the physical characteristics of a reinvestment zone, the language of the subchapter provides guidance. We believe that the legislature's use of the term "zone" in chapter 312 is significant. In addition, we note that the legislature in subchapter C has specifically referred to a reinvestment zone as "an area."[9] The Code Construction Act provides that "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." Gov't Code § 311.011(a). The common definition of the term "zone" in the context of municipal regulation is a region or territory created for a particular purpose.[10] Similarly, other statutes employ the term "zone" to describe some portion

---

[8]You ask how a tax abatement agreement amendment deleting property from a reinvestment zone would affect the five-year periods for reinvestment zones set forth in section 312.401. You also ask whether a commissioners court must hold a hearing prior to changing the boundaries of a reinvestment zone.

[9]Tax Code § 312.401(a), (b).

[10]XX OXFORD ENGLISH DICTIONARY 818 (2d ed. 1989); WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 1372 (1990).

of the earth's surface.[11]  The term "area" is also commonly understood to refer to a single parcel of land.[12]

With these definitions in mind, we turn to your questions.  First, we conclude that the term "zone" itself and the use of the phrase "an area" to describe a reinvestment zone indicate that the legislature intended a reinvestment zone to embrace a single, contiguous whole and that it did not intend a reinvestment zone to include noncontiguous territory.  The requirement that a reinvestment zone be contiguous is consistent with other economic-development statutes, which expressly provide that analogous zones must be contiguous.[13]  With respect to your second question, because the terms "zone" and "area" refer to territory, a parcel of land, or a portion of the earth's surface, we conclude that no part of a building may be included in a reinvestment zone unless the zone includes the land on which the building is located.  A reinvestment zone may not consist of only a floor of a multi-story building.  The conclusion that a reinvestment zone must consist of a portion of land is also consistent with the express provisions in other economic-development statutes.[14]

The foregoing construction of chapter 312 should not limit the authority of a county to designate reinvestment zones and enter into tax abatement agreements.  Nothing in chapter 312 precludes the county from designating a contiguous reinvestment zone and then entering into tax abatement agreements with owners of taxable real property affecting only some property within the zone, such as noncontiguous property owned by a single taxpayer or a floor of a multi-story

---

[11]*See, e.g.,* Agric. Code §§ 74.002 (defining "pest management zone" as "geographical zone"), .102 (describing an "eradication zone" as "geographic area"); Gov't Code § 2303.101(a) (enterprise zone must "have a continuous boundary" and be "at least one square mile but not larger than the greater of . . ."); Health & Safety Code § 361.003(1) (defining "apparent recharge zone" as "recharge zone designated on maps"); Local Gov't Code § 231.052 (authorizing commissioners court to establish "military zone," which "may not extend more than one mile from the boundary line of the military establishment"); Nat. Res. Code § 33.004 (defining "coastal zone" as "the portion of the coastal area located within [certain] boundaries"); Tax Code § 311.003(a) (providing for designation of "contiguous geographic area" as reinvestment zone); V.T.C.S. art. 5421u, § 6.01(1) (defining "buffer zone" as "strip of land").

[12]*See, e.g., Atwood v. Humble Oil & Refining Co.,* 338 F.2d 502, 506 (5th Cir. 1964), *cert. denied,* 381 U.S. 926 (1965) ("'The word area means a surface, a territory, a region.'") (citing *Fleming v. Farmers Peanut Co.,* 128 F.2d 404 (5th Cir. 1942)); *Maisen v. Maxey,* 233 S.W.2d 309, 312 (Tex. Civ. App.--Amarillo 1950, writ ref'd n.r.e.) ("The word 'area' usually means tract, space, region, or a broad part of land."); BLACK'S LAW DICTIONARY 97 (5th ed. 1979) (defining area as "[a] surface, a territory, a region. . . . A particular extent of space or surface or one serving a special purpose.").

[13]*See* Tax Code § 311.003(a) (providing for designation of "contiguous geographic area" as reinvestment zone); Gov't Code § 2303.101(a)(1) (enterprise zone must "have a continuous boundary"), (2) (enterprise zone must be "at least one square mile but not larger than the greater of . . .").

[14]*See id.*

building.[15]   We also note that chapter 312 does not limit a county to designating only one reinvestment zone in the county.

Finally, you ask, "What criteria should be used when considering the granting of a tax abatement in a reinvestment zone." Subchapter C requires the governing body of the county, the commissioners court, to establish "guidelines and criteria governing tax abatement agreements" prior to designating a reinvestment zone. Tax Code §§ 312.002(a), .401(a). "The guidelines must provide for the availability of tax abatement for both new facilities and structures and for the expansion or modernization of existing facilities and structures." *Id.* § 312.002(a). Subchapter C is otherwise silent regarding the criteria governing tax abatement agreements. Given this silence and the fact the legislature has expressly directed commissioners courts to establish guidelines and criteria governing tax abatement agreements, it appears that the legislature intended to leave the substance of such criteria to the discretion of each commissioners court. We believe subchapter C imposes only two very general limitations on this discretion; first, we believe that the county is authorized to enter into a tax abatement agreement with an owner of taxable real property only if the property owner agrees to make improvements to the property[16] and, second, we believe that improvements that form the basis of a tax abatement agreement must be consistent with the purpose of the reinvestment zone designation.[17]   In addition, the criteria must comport with the few express limitations and requirements for a tax abatement agreement set forth by subchapter C.[18]

---

[15]*See* Letter Opinion No. 89-31 (1989) ("It is clear that the [statutory predecessor to chapter 312] does not require all similarly situated properties to enjoy tax-abatement benefits available to contiguous property.").

[16]*See* Tax Code § 312.204(a) (authority to enter into tax abatement agreement predicated on condition that property owner "make specific improvements or repairs to the property").

[17]*See id.* § 312.401(b) (county reinvestment zone designation must "contribute to the retention or expansion of primary employment or . . . attract major investment in the zone that would be a benefit to the property to be included in the zone and would contribute to the economic development of the county"); *see also* Tex. Const. art. VIII, § 1-g(a) (authorizing tax relief "for the purpose of encouraging development or redevelopment and improvement of the property").

[18]*See, e.g., id.* §§ 312.204(a) (setting forth limitations on tax abatements), (b) (limitations applicable when there are tax abatement agreements with more than one property owner in reinvestment zone), .205(a) (setting forth terms that must be included in tax abatement agreement), .402(d) (property owned or leased by commissioners court member may not be subject to tax abatement agreement).

## S U M M A R Y

A county is not authorized to amend a Tax Code chapter 312 tax abatement agreement by deleting land from an existing reinvestment zone. A county reinvestment zone under chapter 312 must be contiguous and may not consist of only a portion of a building. The legislature intended to leave the substance of criteria for tax abatement agreements to the discretion of each county commissioners court, subject to very general constraints and certain specific limitations imposed by chapter 312.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Mary R. Crouter
Assistant Attorney General