GASPAR RODRÍGUEZ MORALES ET AL., Petitioners and Appellees, *v.* EASTERN SUGAR ASSOCIATES, Today FAJARDO EASTERN SUGAR ASSOCIATES, Respondent and Appellant.

No. 12574. Submitted December 9, 1959.—Decided May 5, 1961.

564

*Fiddler, González, Guillemard & Rodríguez* and *Eduardo Negrón Rodríguez* for appellant. *Vicente Géigel Polanco* and *Vicente Géigel Lanuza* for appellees.

Mr. Justice Blanco Lugo delivered the opinion of the Court.

Recently, in *Agostini et al.* v. *Superior Court, ante,* p. 213, decided on March 7, 1961, we reexamined the rule relating to the interruption of the three-year prescription term for filing an action in a claim for wages by an employee against his employer, when the workman is employed in an industry or manufacturing or agricultural enterprise, which operates during the full year. We specifically said that, according to our case law,[1] said term begins to run when (*a*)

---

[1] *Muñoz* v. *District Court,* 63 P.R.R. 226 (1944); *Avellanet* v. *Porto Rican Express Co.,* 64 P.R.R. 660 (1945); *Jiménez* v. *District Court,* 65 P.R.R. 35 (1945); *Valiente & Cía.* v. *District Court,* 68 P.R.R. 491 (1948); *Chabrán* v. *Bull Insular Line,* 69 P.R.R. 250 (1948); *Vicenty* v. *Corona Brewing Corporation,* 73 P.R.R. 131 (1952); *Lebrón* v. *P. R. Ry. Lt. & P. Co.,* 78 P.R.R. 650 (1955); *Berríos* v. *Eastern Sugar Associates,* 79 P.R.R. 647 (1956); *Sierra* v. *Mario Mercado e Hijos,* 81 P.R.R. 305 (1959).

the employee ceases to work for his employer; (*b*) when the worker leaves his employment without offering any explanation therefor, although his employer rehires him; and (*c*) there is a novation of the contract by reason of a substantial change in the nature of the services rendered by the worker.[2]

■■ .The present appeal raises the question of prescription of actions in claims for wages filed by workers or employees of a seasonal industry, that is, one which is operated only during a specific period of the year. We must decide whether the employee ceases in his work at the end of each annual period of operation. It is advisable to make it clear that, since the complaint in the case at bar was filed on September 13, 1957, when Act No. 96 of June 26, 1956 (Sess. Laws, p. 622, 29 L.P.R.A. §§ 245 and 246m) was already in effect, the prescription of plaintiff's action is governed by this new Act and not by § 1867 of the Civil Code (31 L.P.R.A. § 5297). *Agostini et al.* v. *Superior Court, supra.* Therefore, the three-year prescriptive period begins to run "from the date the employee ceased in his employment with the employer" and not "from the time the respective services were last rendered."

The six petitioners rendered services to the respondent, Eastern Sugar Associates, as employees in the processing of sugar and molasses in the sugar industry for a period between 1948 and 1957. They rendered their services during the grinding seasons and they worked as cane weighers, as foremen of the warehouse, and as analysts in the mills laboratory. This phase of the industry only operates during the grinding or crop seasons and generally covers the first months of the year. The rest of the year is known as a "dead season" and during said season the main activity of the industry is

---

[2] By express provision of § 32 (*d*) of Act No. 96 of June 26, 1956 (Sess. Laws, p. 622, 29 L.P.R.A. § 246 (*d*)), a change in the nature of the work of the employee shall not constitute a novation. However, this provision does not affect the cases already filed in the courts on or prior to June 26, 1957. (Section 32 (*e*) of Act No. 96 of 1956, *supra.*)

the planting and cultivation of canes. For the years 1948 and 1953 the petitioners rendered their services under written "contracts";[3] since 1954 and thereafter, the contract between the parties was verbal. During the dead season, four of the petitioners worked for other employers in a tobacco factory, in a furniture factory, supervising works, and in the construction industry; another was engaged in his own commercial business; and the others rested part of the time and worked for the respondent in shipments of sugar and in a construction for the damming of a river. The court

---

[3] The "contracts" to which the parties refer were in the form of a letter in stencil addressed to the petitioners by the respondent. In the years 1948 to 1952, both inclusive, said letters read as follows:

"We have the pleasure of offering you a position as cane weigher in this trust for the grinding season of 1947–48, under the following terms and conditions:

"You will be bound to work 8 hours for each of the seven days of the week, that is, a total of 56 hours.

"Your services shall be compensated at a rate of $.42968 per regular working hour and twice said amount for those hours which you are bound to work in excess of the 8 hours on any one day and for those hours in which your services are required during the day of rest stipulated by law.

"In view of the foregoing you are guaranteed a weekly salary of $27.50 for a period of —— weeks.

"You must report to work every day of the grinding season unless your employer authorizes the opposite.

"You must be ready to start as soon as notified, at the mill or any other mill as provided by the employer.

"It is understood that you must observe good behavior and punctuality during your employment and the employer reserves the right to rescind the contract in case you violate the rules of discipline established by the employer.

"By means of your acceptance of the employment herein offered under the above-mentioned terms and conditions, this letter will be considered by the parties as a labor contract for the grinding season of 1947–48."

In 1953 the letter was amended in the following terms:

"We affirm what we have agreed with you in relation to the cane weigher position which you occupy with this trust for the grinding season of 1952–1953, and whose terms and conditions are the following:

"You shall be bound to work 8 hours during six days of the week, that is, a total of 48 weekly hours.

"Your services shall be compensated at a regular rate of $0.88 per working hour and at twice said rate for each hour you are bound to work

determined also that the petitioners were doing the same work for the respondent during the grinding seasons for many years prior to 1948, and that "the defendant as well as the petitioners believed that at the end of each grinding season the petitioners would work with the defendant and the defendant would hold for the petitioners the opportunity of employment."[4]  There is no substantial controversy on the fact that the petitioner workmen rendered their services six days of the week during eight hours daily, on the basis of

and do work in excess of 8 hours on any one day, and for those hours in which your services are required during the rest day provided by law.

"In view of the seasonal character of your work, your employer guarantees that your services shall be required and compensated during a period for not less than —— weeks during the above-mentioned grinding season.

"It is understood that you shall observe good behavior and punctuality during your employment and the employer will reserve the right to rescind the contract in case you violate the rules of discipline established by the employer.

"By means of your acceptance of the employment herein offered under the above-mentioned terms and conditions, this letter shall be considered by both parties as a labor contract for the grinding season of 1952–1953."

We observe that in relation to the grinding seasons of the years 1951, 1952 and 1953, petitioners Gaspar Rodríguez Morales, Manuel Flores, and Artemio Caraballo, started to work on January 25, 1951, February 8, 1952, and February 23, 1953; the acceptance of the terms of the "contracts" is dated January 31, 1951, March 17, 1952, and April 15, 1953, that is, after they had started to render their services.  As to petitioner Rafael Atilano Colón, the evidence shows that for the grinding seasons of 1950, 1951, and 1953, he started to work on January 30, 1950, February 1, 1951, and February 23, 1953, and that the acceptances of the "contracts" are dated February 7, 1950, April 2, 1951, and March 10, 1953.  This evidently shows that the "contract" was a mere formality for no other purpose than reducing to writing the employment's terms and conditions—specially with reference to salary, hours of work, and the minimum weekly compensation guarantee—with the intention of qualifying it as a Belo type contract. *Peña v. Eastern Sugar Associates,* 75 P.R.R. 288 (1953.)

⁴ The respondent-appellant tries, timidly, to challenge this findings of fact, and to that effect it alleges in its brief that at the end of the grinding season "there did not exist any obligation on the part of the Eastern Sugar Associates to employ them again during the next grinding season, nor any obligation on the part of the petitioners-appellees to work again with the Eastern Sugar Associates during the next grinding season." (Petitioners' brief, p. 5.)  We have carefully examined the evidence introduced and we are satisfied that the finding of the trial court is amply and sufficiently justified.

a weekly compensation, and that the defendant computed and liquidated the hours worked by dividing the weekly salary by the forty-eight working hours. It was also stipulated that the claimant, Ramón Cintrón Maldonado, rendered his services until 1954 on an hourly basis.

The parties reached a satisfactory agreement as to the claim for the years 1955, 1956, and 1957, and the corresponding partial judgment was rendered.

In regards to the claim for the years 1948 to 1954, both inclusive, the defendant raised the special defenses of prescription of the action and that it did not issue because the work rendered was covered by the exemption for overtime pay established by § 7(c) of the Fair Labor Standards Act adopted in Puerto Rico by Mandatory Decree No. 3 of the Minimum Wage Board and § 5 of Act No. 379 of May 15, 1948.

The respondent court overruled the defense of prescription and, applying our ruling in *Olazagasti* v. *Eastern Sugar Associates*, 79 P.R.R. 89 (1956) and *Berríos* v. *Eastern Sugar Associates*, 79 P.R.R. 647 (1956), ordered the defendant to pay at a single rate to the five petitioners who worked on a weekly basis, the hours worked in excess of the forty weekly hours. As to the worker Ramón Cintrón Maldonado, it dismissed the petition because he had rendered his services on the hourly basis. An appeal was filed from the judgment[5] rendered on August 8, 1958.

*Muñoz* v. *District Court*, 63 P.R.R. 226 (1944), is the keystone from which we must draw the solution of the question before our consideration. In that case a workman ren-

---

[5] Even though in *Andino et al.* v. *Fajardo Sugar Co., ante*, p. 81 (1961), we held that after the effective date of Act No. 115 of June 26, 1958 review was the appropriate remedy to bring to our consideration claims for wages originating in the Superior Court and prosecuted under the provisions of Act No. 10 of 1917, and said appeal having been filed within the five-day period (see footnote 12 of said opinion) we denied the motion to dismiss the appeal.

dered his services as a watchman and was in charge of the farms and cattle belonging to his employer, for a weekly compensation, since June 20, 1936 to November 18, 1940. We specifically rejected the interpretation that the period of prescription would be reckoned from the date the workman received his weekly salary, and we held that the period was computed from the time the workman last rendered the services "which he had *uninterruptedly* rendered to his employer" (at 234), that is, since he *ceased* in his work. In *Avellanet* v. *Porto Rican Express Co.*, 64 P.R.R. 660, 664–666 (1945), we held that the time was computed from the date the services were last rendered and therefore, in the event the workman continued working for the same employer, there must be an effective change in the work done by the workman, that is, that the services rendered must be of a different nature. And in *Jiménez* v. *District Court*, 65 P.R.R. 35, 38–39 (1945), we said that an employee in a year round industry (working in a dairy farm) who leaves his employment for months or years *without offering any explanation therefor*, ceases at that time to render services to his employer.[6] We expressly excluded as motives for the ceasing of rendering of services the employee's absence due to a brief illness, breakdown of the machinery or *temporary lack of work*.

José Chabrán worked as a clerk for a company since 1920. He worked only when he was needed or when the company notified him. He did not work every day of the week but *whenever work was available*, he was notified and he worked. Under the foregoing facts, we said that "Chabrán worked *steadily*, not intermittently, for the defendant from 1920 to 1942," *Chabrán* v. *Bull Insular Line*, 69 P.R.R. 250, 259 (1948), and we added that "the plaintiff worked regularly for years for the company. He occasionally missed a day of work solely because of 'temporary lack of work.' Such in-

---

[6] The same ruling is followed in *Valiente & Cía.* v. *District Court*, 68 P.R.R. 491 (1948).

terruptions, therefore, did not . . . start the running of the statute of limitations." In *Berríos* v. *Eastern Sugar Associates*, 79 P.R.R. 647, 660 (1956), we pointed out that an interruption of his employment during the reorganization of the services in which the plaintiff was employed, did not constitute the starting point for computing the prescriptive period.

As we have previously stated, the plaintiffs herein rendered their services during the period covered by the complaint (1948 to 1957), and even prior to said date (*a*) *doing the same work*, (*b*) during all the time the company was operating and his services *were needed*, (*c*) *at the request of the company*, and (*d*) on the understanding that at the termination of each grinding season the workmen would work for the defendant during the next grinding season and it would hold the employment opportunity for them. Under said circumstances we cannot hold that the prescriptive period started at the termination of each grinding season. The element of continued and uninterrupted rendition of the services of the workman for the employer is present in this case as far as the peculiar nature of the work in the industry permits it.[7] Lay-off from work is not a cause that should be charged to the workman. As we have said before, when discussing briefly our decisions in cases of employment in year-round industries, we have paid particular attention to the fact that cessation of services be due to a voluntary act on the part of the workman and that the latter be unable to give a justified or reasonable explanation. We do not see any justifiable ground for not applying this same rule to seasonal activities.

---

[7] Although not strictly applicable, because they involve an interpretation of a statute of collective contract, see, by way of illustration, *Coubourne* v. *Jewett*, 59 N.L.R.B. 176 (1944); *McGee* v. *Durn Co., Inc.*, 59 N.L.R.B. 1508 (1945); *Alaska Salmon Industry, Inc.*, 33 N.L.R.B. 727 (1941); *Sierra Madre-Lamanda Citrus Ass'n*, 23 N.L.R.B. 143 (1940); *Marlin-Rockwell Corp.*, 19 N.L.R.B. 648 (1940).

The appellant-respondent alleges that as the petitioners were engaged in other activities during the dead season and had other employers, we must hold that they actually ceased rendering services at the termination of each grinding season. To show the weakness of this point, it is sufficient to say, following this line of reasoning, that if the employee had not been working during the dead season there would not have been a cessation in the rendition of the services. This is not a logical and reasonable result. The main thing is that notwithstanding the fact that they were engaged in other activities which the company was not operating, the plaintiffs left those employments as soon as their services were required by the defendant and there was work available. Likewise, another important factor to be considered is the nature of the work done, and that when the plaintiffs returned to work they occupied the same positions they had held for many years. In effect we can say that they constituted the labor crew of the industrial phase.

In regards to worker Gervasio Rosario who worked with the same defendant in other duties during the dead season, the fact of the change in the nature of the services does not affect him since the defense of prescription for novation of the contract does not lie in this case. *Agostini et al.* v. *Superior Court, supra.*

Therefore, we decide that the respondent court did not commit error in dismissing the defense of prescription of the action.

In order to decide the second special defense raised by the defendant, and in view of the nature of the activities carried out by the workers, it is necessary to establish that we are dealing with employees exempted from overtime compensation by § 7(c) of the Fair Labor Standards Act (29 U.S.C. § 207(c)), as they are included in the process of the elaboration of sugar. *Maneja* v. *Waialua Agricultural Co.,* 349 U. S. 254 (1955), 216 F.2d 466 (CA 9, 1954), 97 F.

Supp. 198; *McComb* v. *Del Valle*, 80 F. Supp. 945 (D.C. P.R. 1948); *cf.* *Vives* v. *Serrallés*, 145 F.2d 552 (CA 1, 1944); *Bowie* v. *González*, 117 F.2d 11 (CA 1, 1941); *Calaf* v. *González*, 127 F.2d 934 (CA 1, 1942); *McComb* v. *Super-A Fertilizer Works, Inc.*, 165 F.2d 824 (CA 1, 1948). However, our local laws on labor contract being more advantageous than the federal statute and in conformity with § 18 of the Fair Labor Standards Act, we must apply our own legislation.[8] *Laborde* v. *Eastern Sugar Associates*, 81 P.R.R. 468 (1959); *Olazagasti* v. *Eastern Sugar Associates*, 79 P.R.R. 89 (1956).

■ The complaint in this case covers the period between the grinding seasons of 1948 and 1954. As to the grinding season of 1948 the evidence established that four of the petitioners started to work at the Central Santa Juana on February 13, 1948 and finished on June 30 of the same year; and the other petitioner that worked at the Central Juncos started to work on February 7, 1948 and finished on June 19 of said year. In the aforesaid *Laborde* case the extension of the regular workweek for the sugar industry during the grinding seasons is clearly and precisely established (at 474):

"If the complaint refers to the period between April 9, 1946, date on which Act No. 289 fixing a day of rest for every six days of work became effective, until May 15, 1948, date on which Act No. 379 establishing the labor wages in Puerto Rico became effective, the regular workweek has a limit of 48 hours during the grinding season and 40 hours during the dead season.

"If the complaint refers to the period from May 15, 1948, date on which Act No. 379 establishing the labor wages in Puerto Rico took effect, up to the present, insofar as the 'grinding season' is concerned, rather than a regular workweek of 40 hours

---

[8] For present purposes it refers to Act No. 289 of April 9, 1946 (Sess. Laws, p. 682, 29 L.P.R.A. §§ 295–299), subdivisions B-2(*a*) and B-2(*b*) of Mandatory Decree No. 3 of the Minimum Wage Board in effect since April 29, 1943, and article 5 of Act No. 379 of May 15, 1948 (Sess. Laws, p. 1254, 29 L.P.R.A. § 274).

what really exists is a new divisor based on the 40 hours to compute the compensation for extra hours of work in excess of the said 40 hours, as we shall state hereinafter. As to the 'dead season,' the regular workweek consists of 40 hours."

Applying this rule to the facts in the present case, the respondent court erred in granting compensation to the petitioners for the eight hours in excess of the forty hours a week which they worked during any period prior to May 15, 1948.[9] Consequently, the case shall be remanded to the lower court which shall enter a new judgment in conformance with the terms of this opinion.

Mr. Justice Hernández Matos dissented.

---

[9] A working week in the industrial phase of the sugar industry until May 15, 1948, was of forty-eight hours. The basis for determining the regular rate per hour is obtained by dividing the weekly salary by the forty-eight hours, but in this case the regular rate per hour shall not be less than the minimum rate established by the wage schedule of paragraph B-1 of the Decree. *Laborde* v. *Eastern Sugar Associates, supra* at 475.